# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 119

APRIL TERM, A.D. 2014

September 24, 2014

TOMMY F. DOGGETT,

Appellant
(Petitioner),

v.

WYOMING DEPARTMENT OF
WORKFORCE SERVICES,
UNEMPLOYMENT INSURANCE
COMMISSION,

Appellee
(Respondent).

S-14-0012

*Appeal from the District Court of Fremont County*
*The Honorable Marvin L. Tyler, Judge*

*Representing Appellant:*
    *Sky D. Phifer of Phifer Law Office, Lander, WY.*

*Representing Appellee:*
    *Peter Michael, Wyoming Attorney General; John D. Rossetti, Deputy Attorney General; Michael J. Finn, Senior Assistant Attorney General; and Samantha Caselli, Assistant Attorney General.*

*Before BURKE, C.J., and HILL, KITE\*, DAVIS, and FOX, JJ.*

*\*Chief Justice at time of expedited conference.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**HILL,** Justice.

[¶1]    Appellant Tommy F. Doggett was fired from Strokers, Inc., a Harley Davidson service center in Lander, Wyoming.  He applied for unemployment insurance benefits and after a hearing, the hearing officer determined that Doggett's discharge was not for misconduct connected with his work.  His employer appealed, and the Unemployment Insurance Commission ("Commission") reversed the hearing officer.  Doggett then sought review in district court, where the Commission was affirmed.  This appeal followed.

## ISSUE

[¶2]    Doggett presents one issue for our review:

> Was the decision of the Commission that the employee was properly discharged from his employment for misconduct supported by substantial evidence?

## FACTS

[¶3]    In the summer of 2011 Tommy F. Doggett, an employee of Strokers USA, Inc., a Harley Davidson service center in Lander, was assigned to repair a motorcycle belonging to Strokers owner, Jeff Martin.  Martin returned from an extended summer vacation expecting his motorcycle to be fixed and ready to ride but that was not the case.  Doggett had not fixed the motorcycle and claimed that he was unaware Martin wanted him to fix it while Martin was away.

[¶4]    Doggett fixed Martin's motorcycle immediately.  In doing so, he chipped a fin on the motor but repaired it.  Doggett did not tell Martin of his error but Martin later discovered it anyway.  Later, problems were discovered with other motorcycles on which Doggett had worked, including an installed dented cylinder, a dissatisfied customer, and a loose rear-end on another bike.

[¶5]    Doggett was discharged on October 11, 2011 after working over five years with Strokers. Doggett claims that Martin terminated him by telling him, "I'm taking the shop in a different direction.  I can't afford you anymore.  I'm letting you go.  Okay, I don't want you here anymore, [sic] leave."  Martin, on the other hand, claims that he fired Doggett because of customer complaints and come backs resulting in additional costs to Strokers to correct Doggett's errors.  In any case, Doggett filed for unemployment benefits.

[¶6]    In November of 2011 a deputy for the Unemployment Division determined that Doggett was discharged for insubordination and poor workmanship.  Doggett appealed

1

and in January of 2012 a hearing officer conducted a hearing and issued a decision awarding Doggett benefits, concluding that Doggett's discharge was not for misconduct connected with his work. On Strokers' appeal to the Commission the Commission reversed the hearing officer and ruled that Doggett was terminated for misconduct. Doggett sought review in district court, where the court affirmed the Commission. This appeal followed.

**STANDARD OF REVIEW**

[¶7]    On appeal from a district court's review of an administrative agency's decision, we do not give any deference to the district court's decision. *State v. Laramie County* (*In re Ringrose*), 2013 WY 68, ¶ 7, 302 P.3d 900, 902 (Wyo. 2013) (citing *Dutcher v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2010 WY 10, ¶ 9, 223 P.3d 559, 561 (Wyo. 2010)); *Dale v. S & S Builders, LLC*, 2008 WY 84, ¶ 8, 188 P.3d 554, 557 (Wyo. 2008). Our review is governed by Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2011):

> (c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
>
> > (i) Compel agency action unlawfully withheld or unreasonably delayed; and
> >
> > (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
> >
> > (A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
> >
> > (B) Contrary to constitutional right, power, privilege or immunity;
> >
> > (C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;
> >
> > (D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

In accordance with § 16-3-114(c) we review the agency's findings of fact by applying the substantial evidence standard. *Dale*, ¶ 22, 188 P.3d at 561. Substantial evidence means

> "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bush v. State ex rel. Wyo. Workers' Comp. Div.*, 2005 WY 120, ¶ 5, 120 P.3d 176, 179 (Wyo. 2005) (citation omitted). Findings of fact are supported by substantial evidence when we can discern a rational premise for those findings from the evidence preserved in the record. *Id*. "We give great deference to the Commission's findings of fact in light of its expertise and extensive experience in employment matters." *Weidner v. Life Care Centers of America*, 893 P.2d 706, 710 (Wyo. 1995). An agency's conclusions of law are reviewed *de novo*. *Moss v. State ex rel. Wyo. Workers' Safety & Comp. Div.*, 2010 WY 66, ¶ 11, 232 P.3d 1, 4 (Wyo. 2010); *Dale*, ¶ 26, 188 P.3d at 561-62.

*In re Ringrose*, ¶ 9, 302 P.3d at 903. "Importantly, our review of any particular decision turns not on whether we agree with the outcome, but on whether the agency could reasonably conclude as it did[] based on all the evidence before it." *Davenport v. State ex rel. Wyoming Workers' Safety and Compensation Div.*, 2012 WY 6, ¶ 12, 268 P.3d 1038, 1042 (Wyo. 2012).

## DISCUSSION

[¶8] In Doggett's only issue on appeal he contends that the Commission's denial of unemployment insurance benefits was not supported by substantial evidence. Instead he claims the evidence is clear that, at the time he was fired, his employer did not know about specific instances of misconduct. The Commission argues that its decision was supported by substantial evidence and asserts that the record shows that Doggett acted contrary to his employer's interests and was discharged for misconduct connected to his work. *See* Wyo. Stat. Ann. § 27-3-311(f) (LexisNexis 2013).[1]

---

[1] Wyo. Stat. Ann. 27-3-311(f) states:

> An individual shall be disqualified from benefit entitlement beginning with the effective date of an otherwise valid claim or the week during which the failure occurred, until he has been employed in an employee-employer relationship and has earned at least twelve (12) times the weekly benefit amount of his current claim for services after that date, if

[¶9]  Misconduct is defined as

> an act of an employee which indicates a disregard of (1) the employer's interests or (2) the commonly accepted duties, obligations and responsibilities of an employee.  This would include carelessness or negligence of such degree or recurrence as to reveal willful intent or an intentional disregard of the employer's interests or of the employee's duties and obligations to his employer.  Inefficiency or failure in good performance as the result of inability or incapacity; ordinary negligence in isolated instances or good faith errors in judgment or discretion are not deemed to be misconduct within the meaning of the Law.

 *Safety Medical Services, Inc. v. Employment Sec. Com'n of Wyoming*, 724 P.2d 468, 472 (Wyo. 1986).  Also,

> Unemployment compensation statutes are to be liberally construed in favor of the claimants. *Wyoming Dep't of Employment, Div. of Unemployment Ins. v. Rissler & McMurry Co.*, 837 P.2d 686, 690 (Wyo. 1992).  We construe the term misconduct "in a manner least favorable to working a forfeiture" because unemployment compensation is part of an employee's compensation, not "a gratuity which may be withheld frivolously." *Id.*

*Aspen Ridge Law Offices*, P.C. v. Wyoming Dep't of Employment, 2006 WY 129, ¶ 16, 143 P.3d 911, 917 (Wyo. 2006).

[¶10] Here, the Commission found that Doggett's employer proved that Doggett was terminated from his employment because he engaged in misconduct.  *See Wyoming Dept. of Employment, Div. of Unemployment Ins. v. Rissler & McMurry Co.*, 837 P.2d 686 at 690 (Wyo. 1992)

> When an employer contends that violation of its rule constitutes misconduct, the employer bears the burden of establishing the existence of the rule and its violation. If the employer establishes these elements, the burden shifts to the

the department finds that he was discharged from his most recent work for misconduct connected with his work.

employee to demonstrate either that the violation was justified or that the rule was unreasonable.

Thus, this Court must review the entire record and consider whether there is relevant evidence which a reasonable mind might accept in support of the Commission's decision.

[¶11] In its decision in the instant case the Commission made the following relevant findings of fact:

## FINDINGS OF FACT

A.     The claimant admitted to chipping the motor fin on the employer's owner's bike but failed to inform the employer's owner.
B.     The claimant admitted to installing a damaged motor cylinder in a customer's bike and did not immediately report the damaged motor cylinder to the manufacturer or the employer's owner.

## CONCLUSIONS

A.     The claimant was discharged from his employment with the employer because the claimant chipped the motor fin on the employer's owner's bike and failed to inform the employer's owner.
B.     The claimant installed a damaged motor cylinder into a customer's bike and did not immediately report the damaged motor cylinder to the manufacturer or the employer's owner.
C.     The claimant's failure to inform the employer's owner of the chipped motor fin and installing a damaged motor cylinder into a customer's bike without reporting the damaged motor cylinder to the manufacturer or the employer's owner demonstrate an intentional disregard of the employer's interests and of his obligations as an employee.
D.     The claimant was discharged from his most recent work for misconduct connected with his work.

[¶12]  At the hearing Martin and Doggett testified extensively regarding Doggett's work on the specific motorcycles with a chipped fin and a dented cylinder.  About his own bike, Martin testified that he only discovered the chipped fin **after** Doggett was terminated and after he hired another mechanic to examine the bike.

Hearing Officer: When did you have Mr. Doggett look into

your bike?

Martin: That was a motor that Tom had built for me in the spring of 2011.

….

Hearing Officer: Okay. And when did you find out that there were problems with it?

Martin: Initially the bike throughout the summer had puffed smoke. Uh, I … And the … And the motor always had a little excessive noise. I took into consideration that the motor was being broke in, so I didn't, uh, I didn't take too much concern about it, but towards the end of the summer I realized that on start-up how much smoke it was puffing and I'd . … I'd mentioned it to Tom and we just hadn't had a chance to get back into the motor yet, but uh, I paid a mechanic that I, a new hire that I have here now, to go back through the motor and there was a lot of clearance issues with the motor.

Hearing Officer: After Mr. Doggett was terminated from his employment,

Martin: Yes, after. … But the motor was having problems prior to … And Tom knew about them.

Hearing Officer: Okay. Well, if you were having so many comebacks from other people, customers, why would you trust Mr. Doggett with your own bike?

Martin: Well, this was … I know Tom's got the talent to do good work and I … don't know why this, the year 2011 was just a bad year for him … maybe Tom has those answers.

[¶13] About Martin's bike, Doggett testified:

But the thing about his motorcycles, when he came back, I was unaware that he had a ride that he was wanting to go on. The reason why his bike wasn't put back together by the, when he got back was because I wanted to talk to him about the fact his pistons, his cylinders had been honed enough that, that every time the glaze had gotten broken on them they get a little bit bigger so I wanted to talk to him about possibly

getting a new set of pistons.

> Well, he comes in and he's got a ride he wants to go on in two days. All right? I don't have the time to do that. He was upset because his motorcycle wasn't together, came in, kind of got, uh, actually started off yelling at me, saying that it was disrespectful that his bike wasn't back together. Well, if I'd have known his bike needed to be back together, I would have, if he'd a got, talked to me about and called me from Germany and said, "Hey, I want my bike back together," I would have told him, "Well, you need new pistons," and I would have ordered them. He's leaving for Colorado in two days, so I just put his bike back together so he could go on the ride. I didn't address the piston issues because he was mad, you know.

Also during the hearing, Mr. Martin asked Doggett, "Did you break the fin on my cylinder head on my bike when you assembled the motor, and disguised it?" Doggett responded:

> When it, I was putting it on the BGS20, it chipped that little section out and I repaired it so that you could ride it. Uh, we, uh didn't have time to … I had another cylinder, but I didn't have time to have it powder coated and diamond cut for you, you know. I didn't tell you about that because you wanted to go on, you was wanting to go on the ride, so I fixed it.

The Commission found that Doggett admitted to chipping the motor fin on Martin's motorcycle but failed to inform Martin and that Doggett was discharged from his employment ***because*** he had chipped the motor fin on Martin's bike and failed to inform Martin.

[¶14] On appeal to the district court the court ruled and explained as follows:

> A review of the record shows that, although Martin did not know the extent of the damage to the Employer's Bike until after [Doggett] was fired, Martin did know, prior to [Doggett] being fired, that there were problems with the Employer's Bike cause by [Doggett]. [Doggett] worked on the Employer's Bike in the spring of 2011. In the process of putting the Employer's Bike back together, [Doggett] chipped a fin. [Doggett] installed the chipped fin nonetheless. Upon

7

Martin's return from his European vacation, he determined that there were problems with the Employer's Bike. Martin's testimony demonstrates that the Employer's Bike emitted smoke and had a "little excessive noise." Martin further testified that [Doggett] also knew of the problems with the Employer's Bike. After [Doggett] was terminated from his employment, Martin paid a mechanic to "go back through the motor." At the time, Martin discovered the issues with the motor. Therefore, the uncontroverted facts in the record demonstrate that even though Martin did not know the chipped fin on the Employer's Bike was the precise cause of the problems associated with the Employer's Bike, he did know that the Employer's Bike had problems. Martin also knew that [Doggett] was the employee responsible for working on the Employer's Bike. Consequently, the record reveals that although Martin did not know precisely the cause of the problems of the Employer's Bike, [Doggett] was discharged from his employment for reasons associated with the chipped motor fin installed into the Employer's Bike.

Further, Martin testified that his decision to fire [Doggett] "was something that had been building for a couple of years between [Doggett] and Martin." A review of the record shows that it is reasonable to conclude that [Doggett] was terminated from his employment because [Doggett] installed a chipped motor fin in the Employer's Bike.

[¶15] Doggett claims that the Commission's ruling is not only unsupported by the evidence submitted at the hearing in this matter but that the evidence submitted completely controverts the ruling. The evidence from the hearing shows that Doggett worked on Martin's motorcycle in the spring of 2011 and that afterwards the bike had excessive noise and smoke. Doggett was fired in October of 2011. However, Martin did not know about the chipped fin at the time of the discharge nor is there any evidence on record that the repaired chipped fin affected the performance of Martin's motorcycle.

[¶16] Bearing the foregoing facts in mind, we must also look to the evidence surrounding the customer's motorcycle with the dented cylinder. The installed dented cylinder was also listed by the Commission as a portion of Doggett's misconduct that resulted in his termination from Strokers. At the hearing Martin did not testify that he terminated Doggett due to the dented cylinder and furthermore, he testified that he did not know the cylinder was dented when he fired Doggett. Doggett explained at the hearing that if Martin would have asked, Doggett would have explained that he was not finished working on the bike, as the cylinder came out of the box dented, the cylinder

studs were not long enough, the foot pedal had yet to be installed, and the only reason the cylinder was installed was to assure that the motor would fit into the frame after the hammering to enlarge the frame to enable a good fit.

[¶17] The Commission made findings about the dented cylinder the general gist of which is that Doggett admitted to installing a damaged motor cylinder in a customer's bike and did not immediately report the damage to the manufacturer or Martin. The Commission then concluded that this demonstrated an intentional disregard of the employer's interests and of his obligations as an employee and justified Doggett being discharged for misconduct.

[¶18] The district court had the task of determining whether there was substantial evidence to support the Commission's decision. In order to do so, the court determines if there is "such relevant evidence as reasonable minds would accept as adequate to support a conclusion." *Rissler & McMurry Co.*, 837 P.2d at 689. Unemployment compensation statutes are to be liberally construed in favor of the claimants. In support of its decision upholding the Commission's decision, the district court stated:

> The record reveals that although Martin did not know about the damaged cylinder specifically on the Customer's Bike until after [Doggett] was fired, Martin did know that there were problems with the Customer's Bike. The evidence and testimony also show that upon [Doggett] starting the Customer's Bike it was apparent that the Customer's Bike had problems because of the "excessive noise." Problems with the Customer's Bike indicated to Martin that Strokers would incur additional expenses in fixing the Customer's Bike. … Consequently, the record demonstrates that although Martin did not know precisely the cause of the problems of the Customer's Bike, [Doggett] was discharged from his employment for reasons associated with the damaged motor cylinder he installed into the Customer's Bike.

[¶19] In both bike scenarios – the employer's bike with the chipped fin and the customer's bike with dented cylinder – the district court accepted the Commission's findings, acknowledged that the "misconduct" listed by the Commission was actually unknown by the employer at the time of Doggett's discharge, but then unreasonably affirmed the Commission with a generalized after-the-fact justification. The district court concluded that the Commission was justified in its decision because the employer would incur additional costs as a result of Doggett's actions. However, the Commission specifically found that

> 21. The claimant told the employer's owner that if there was

9

to be "come backs" that resulted from something he did wrong, he would work on that "come back" without charging the employer.

22. The claimant believed he tried his best to do the work he did for the employer because his own professional reputation was a stake.

[¶20] The conclusion by the district court seems to be in direct contradiction of the Commission's findings. While the record does reflect that Martin was clear that his bike was producing "excessive noise" and stated so prior to terminating Doggett, the Commission's findings were specific to the chipped fin and the dented motor. Those precise instances of misconduct were not discovered until after Doggett's termination.

[¶21] In other cases where we have determined that misconduct was proven pursuant to the unemployment statute,

> there was evidence of a known obligation or responsibility and a willful and intentional failure to comply. For example, in *Koch*, ¶ 21, 294 P.3d at 894, the evidence established that shoveling snow was an "outstanding expectation" of the employee's job duties, the employee was aware of the duty, and he admitted that he did not perform that task on the day before he was terminated. On the other hand, when the evidence demonstrates the employee did not willfully and intentionally violate a known work responsibility, we have consistently held that the employee did not commit misconduct justifying a denial of unemployment insurance benefits. To illustrate, an employee's inadvertent violation of a company policy prohibiting visitors from leaving the mine check-out station without being logged in did not amount to misconduct in *Safety Medical Services*, 724 P.2d at 473, and a law firm employee's failure to complete an affidavit in a timely fashion was an isolated instance of ordinary negligence which did not constitute misconduct in *Aspen Ridge*, ¶ 18, 143 P.3d at 917-18. Even seemingly more egregious occurrences have been considered good faith errors in judgment rather than misconduct. In *SF Phosphates*, 976 P.2d at 202-03, the employee was entitled to unemployment benefits even though he made threatening statements against a former manager.

*In re Ringrose*, ¶ 17, 302 P.3d 900 at 905.

[¶22] Similar to the previous cases there is no evidence of a known obligation or

responsibility and a ***willful*** and ***intentional*** failure to comply. As mentioned above, our task is not to determine whether we agree with the outcome of the case. *Dale*, ¶ 22, 188 P.3d at 561. Our review is limited to whether, based upon all of the evidence presented before it, the agency could reasonably conclude as it did. *Id*. We conclude that the Commission's decision that Doggett engaged in misconduct by chipping the motor fin on his employer's bike, and by installing a dented cylinder on a customer's bike is not a reasonable decision based upon the evidence that was before it. Given the testimony elicited at the hearing, the employer did not know about the chipped fin or the dented cylinder at the time of Doggett's discharge. The hearing testimony does not support the standard for dismissal. For that reason, the decision of the Commission is unsupported by the record.

**CONCLUSION**

[¶23] We reverse the district court's decision to deny Tommy F. Doggett's unemployment compensation benefits and direct that benefits should be restored to him. The district court's decision is reversed and remanded for entry of an order reversing the Commission's decision.