# *IN THE SUPREME COURT, STATE OF WYOMING*

## 2015 WY 113

*April Term, A.D. 2015*

**August 18, 2015**

|  |  |
|---|---|
| CHEYENNE NEWSPAPERS, INC. | |
| Petitioner, | |
| v. | S-15-0190 |
| FIRST JUDICIAL DISTRICT COURT, STATE OF WYOMING, COUNTY OF LARAMIE, | |
| Respondent. | |

### ORDER REVERSING, IN PART, "ORDER CONCERNING MEDIA ACCESS DURING TRIAL"

[¶1]     **This matter** came before the Court upon a "Petition for Writ of Review of Media Access Order and Request for Expedited Review," filed herein August 12, 2015.  Petitioner Cheyenne Newspapers, Inc. challenges a prior restraint on publication imposed by Respondent District Court.  That restraint provides that "No one may . . . release the name of a juvenile witness during the trial" scheduled to begin Monday, August 17, 2015, in the case of *State of Wyoming v. Phillip Sam*, Docket 32-316, First Judicial District Court for the State of Wyoming.  Although the media and the public are permitted to attend the open trial, they are prohibited from revealing the names of minor witnesses.  Those witnesses will be identified by name when they testify.  The question here is whether that prohibition survives constitutional scrutiny.

[¶2]     After an initial review of the petition, this Court, on August 13, 2015, entered an "Order Granting Request for Expedited Review."  We permitted responses to be filed on or before 9 a.m. on Monday, August 17, 2015.  This Court further notified the parties that a final decision on the petition would be made by 5 p.m. on August 17.  Now, after further review of the petition, the materials attached thereto, the "Wyoming Attorney General's Response to Petition for Writ of Review of Media Access Order," the materials attached thereto, and the file, this Court finds it appropriate to rule on this matter without further briefing.  This Court concludes the district court's order violates the Free Speech and Free Press Clauses of the First Amendment to the United States Constitution, because this is not the sort of exceptional case where a prior restraint on speech survives constitutional scrutiny.

## Facts

[¶3]    According to the materials submitted, Mr. Phillip Sam is charged as an adult with one count of first degree murder and twelve counts of aggravated assault.  He was sixteen years old at the time of the offense, and it appears several of the witnesses set to testify at trial are juveniles.

[¶4]    A hearing was held on August 6, 2015, concerning the question of media access to the trial, and Petitioner was invited to attend and be heard. That same day, Petitioner filed an objection to various restrictions of the proposed order.  A day later, August 7, 2015, Petitioner was allowed to intervene for the limited purpose of being heard on its objection to the proposed order restricting the publication of names and photographs of witnesses who are minors.[1]  On August 11, 2015, another hearing was held on Petitioner's objections.

[¶5]    On August 12, 2015, the district court entered an "Order Concerning Media Access During Trial" that limited, *inter alia*, the identification of juvenile witnesses who testify during the trial in open court.  It concluded that this measure was necessary because some of the juvenile witnesses had been the subject of threats.  The district court's order states in pertinent part: "No one may . . . release the name of a juvenile witness during the trial."  The "Petition for Writ of Review of Media Access Order and Request for Expedited Review" followed.

## Standard of Review

[¶6]    Constitutional challenges present issues of law that we review *de novo*.  *Operation Save Am. v. City of Jackson*, 2012 WY 51, ¶ 17, 275 P.3d 438, 447 (Wyo. 2012)

## Discussion

[¶7]    The First Amendment provides that "Congress shall make no law ... abridging the freedom of speech, or of the press . . . ."  This Amendment applies to judicial orders such as the order issued by the district court in the instant case.  *See Alexander v. United States*, 509 U.S. 544, 550, 553 n.2, 113 S.Ct. 2766, 2771, 2773 n.2 (1993); *see also Oklahoma Pub. Co. v. District Court of Oklahoma*, 430 U.S. 308, 308-09, 97 S.Ct. 1045, 1045-46, 51 L.Ed.2d 355 (1977).  Thus, a judicial order prohibiting the publication of information disclosed in a public judicial proceeding unavoidably clashes with two basic protections that the First Amendment provides.  That is, "the right against prior restraints on speech and the right to report freely on events that transpire in an open courtroom." *United States v. Quattrone*, 402 F.3d 304, 308 (2d Cir. 2005).

[¶8]    "The term prior restraint is used to describe 'administrative and judicial orders forbidding certain communications when issued in advance of the time that such communications are to occur.'" *Operation Save Am.*, ¶ 60, 275 P.3d at 457 (quoting *Alexander*,

---

[1] On Petition to this Court, Petitioner has not contested the district court's restriction that "[n]o one may broadcast or publish a picture or video identifying a juvenile witness . . . ."  Thus, the narrow issue that is before us concerns the restriction of releasing the names of juvenile witnesses during trial.

509 U.S. at 550, 113 S.Ct. at 2771) (emphasis omitted); *see Quattrone*, 402 F.3d at 309 (citing *Alexander*, 509 U.S. at 550, 113 S.Ct. at 2771). The United States Supreme Court long ago made clear that "prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559, 96 S.Ct. 2791, 2803, 49 L.Ed.3d 683 (1976); *see Operation Save Am.*, ¶ 61, 275 P.3d at 457. This is because

> [t]he damage can be particularly great when the prior restraint falls upon the communication of news and commentary on current events. Truthful reports of public judicial proceedings have been afforded special protection against subsequent punishment. For the same reasons the protection against prior restraint should have particular force as applied to reporting of criminal proceedings, whether the crime in question is a single isolated act or a pattern of criminal conduct. A responsible press has always been regarded as the handmaiden of effective judicial administration, especially in the criminal field. Its function in this regard is documented by an impressive record of service over several centuries. The press does not simply publish information about trials but guards against the miscarriage of justice by subjecting the police, prosecutors, and judicial processes to extensive public scrutiny and criticism.

*Nebraska Press Ass'n*, 427 U.S. at 559-60, 96 S.Ct. at 2803 (internal citations and quotations omitted).

[¶9] Recently, in *Circuit Court of Eighth Judicial Dist. v. Lee Newspapers*, 2014 WY 101, ¶ 23, 332 P.3d 523, 530-31 (Wyo. 2014), this Court discussed the importance of open criminal trials and the role the press plays therein:

> In *Globe Newspaper Co. v. Superior Court of Norfolk County*, the United States Supreme Court noted that open criminal trials provide "a check on the judicial process--an essential component in our structure of self-government." 457 U.S. at 606, 102 S.Ct. at 2620. Specifically, the press plays a vital role in disseminating information to the general public concerning the judiciary and what occurs in its domain. *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 491-92, 95 S.Ct. 1029, 1044-45, 43 L.Ed.2d 328 (1975). "[T]he press serves to guarantee the fairness of trials and to bring to bear the beneficial effects of public scrutiny upon the administration of justice." *Id.*; *see also Richmond Newspapers*, 448 U.S. at 572-73, 100 S.Ct. at 2825, ("Instead of acquiring information about trials by firsthand observation or by word of mouth from those who attended, people now acquire it chiefly through the print and electronic media. In this sense, this validates the media claim of functioning as surrogates for the public."). Public access to judicial documents serves to broaden the dissemination of information thereby allowing the general public to guard against malfeasance in our criminal justice system. *Antar*, 38 F.3d at 1359. The public provides a significant and positive influence when judicial documents remain open. *Press-Enterprise II*, 478 U.S. at 8, 106 S.Ct. at 2740.

[¶10]   Another applicable principle is this:  "Once true information is disclosed in public court documents open to public inspection, the press cannot be sanctioned for publishing it.  In this instance as in others reliance must rest upon the judgment of those who decide what to publish or broadcast."  *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469, 496, 95 S.Ct. 1029, 1047, 43 L.Ed.2d 328 (1975).  In *Oklahoma Pub. Co.*, 430 U.S. at 310-11, 97 S.Ct. at 1046-47, the High Court wrote:

> This principle was reaffirmed last Term in *Nebraska Press Assn. v. Stuart, supra*, which held unconstitutional an order prohibiting the press from publishing certain information tending to show the guilt of a defendant in an impending criminal trial. In Part VI-D of its opinion, the Court focused on the information covered by the order that had been adduced as evidence in a preliminary hearing open to the public and the press; we concluded that, to the extent the order prohibited the publication of such evidence, "it plainly violated settled principles," 427 U.S., at 568, citing *Cox Broadcasting Corp. v. Cohn, supra*; *Sheppard v. Maxwell*, 384 U.S. 333, 362-363 (1966) ("[T]here is nothing that proscribes the press from reporting events that transpire in the courtroom"); and *Craig v. Harney*, 331 U.S. 367, 374 (1947) ("Those who see and hear what transpired [in the courtroom] can report it with impunity"). The Court noted that under state law the trial court was permitted in certain circumstances to close pretrial proceedings to the public, but indicated that such an option did not allow the trial judge to suppress publication of information from the hearing if the public was allowed to attend: "[O]nce a public hearing had been held, what transpired there could not be subject to prior restraint." 427 U.S., at 568.

[¶11]   There is a heavy presumption against the constitutional validity of restrictions on the publication of information obtained lawfully by the media.  *Nebraska Press*, 427 U.S. at 558, 96 S.Ct. at 2802; *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70, 83 S.Ct. 631, 639, 9 L.Ed.2d 584 (1963).   There may, however, be certain exceptional cases where such a restraint may pass constitutional muster.  *See Nebraska Press*, 427 U.S. at 562-63, 96 S.Ct. at 2804; *New York v. Ferber*, 458 U.S. 747, 763–64, 102 S.Ct. 3348, 3358, 73 L.Ed.2d 1113 (1982) (child pornography); *Near v. Minnesota*, 283 U.S. 697, 716, 51 S.Ct. 625, 631, 75 L.Ed. 1357 (1931) (contemplating national security issues); *Operation Save Am.*, ¶ 57, 275 P.3d at 456 ("Its general protections are not, however, absolute."); *Quattrone*, 402 F.3d at 310.  But, where the class of speech "otherwise receives First Amendment protection, however, courts subject prior restraints on speech or publication to exacting review."  *Id.*  In cases like the one presently before us, where the district court has restricted news coverage in order to protect the identity of juvenile witnesses, the court must consider: (1) the nature and extent of the news coverage in question; (2) whether measures other than a prior restraint on publication exist that would likely mitigate the effects of unrestricted publicity of the juvenile's names; and (3) the likely effectiveness of a prior restraint to prevent the threatened danger. *Nebraska Press*, 427 U.S. at 562, 96 S.Ct. at 2804; *see also Quattrone*, 402 F.3d at 310-11.  Careful examination must be conducted of both the restrictive order's precise terms and whether the record supports the prior restraint on publication. *Id.*

[¶12]   Application of the factors set forth above to the instant case demonstrates that the district court's order plainly violates Petitioner's First Amendment rights.  The district court's order does

not include analysis on the three factors noted. Even if the district court did perform the analysis, we find the second and third factors weigh against the prior restraint, and the first factor must take on lesser weight given our analysis of factor three.

[¶13] Starting with the third factor, this Court must assess the "probable efficacy of prior restraint on publication as a workable method of protecting" the juvenile witnesses. *Nebraska Press*, 427 U.S. at 565, 96 S.Ct. at 2806. In its objection to prior restraint on photography, Petitioner argued:

> . . . the reported threats are insufficient cause for the prohibition on the photography of witnesses. First, if a witness has received threats then his identity is already known to the perpetrators. Further, once the name is revealed in court, then both defendant and the prosecution and a "courtroom of spectators" know his/her identity, who may reveal it to others.

While this objection was directed to the prohibition on photography, it is equally applicable here. The perpetrators of the threats know their subjects, if not by name then at least by sight. Thus, while at first blush the prior restraint may appear to protect the witnesses, closer scrutiny of the matter indicates the restraint will likely do little to protect the witnesses from the threatening individuals, who may be sitting in the open courtroom observing the testimony.

[¶14] Given this Court's conclusion on factor three, this Court finds that factor one—extent of publicity—must be afforded less weight. This Court notes this factor seems to take on greater significance when a prior restraint is imposed to protect the defendant's right to a fair trial. *Nebraska Press*, 427 U.S. at 562-63, 96 S.Ct. at 2804. That is not the issue here. In any case, given our conclusion the prior restraint is not an efficacious method of protecting the threatened juveniles, the extent of publicity in this case will likely have little effect on the individuals doing the threatening.

[¶15] With respect to factor two, there are other protective measures, short of prior restraint, that may protect the juvenile witnesses. Importantly, it is a crime in this state to attempt to influence or intimidate a witness. Wyo. Stat. Ann. § 6-5-305 (LexisNexis 2015). While this Court does not require the district court to impose any sort of protective measure, this Court notes the district court is free to give emphatic warnings to trial observers that it is illegal to attempt to influence or intimidate witnesses. Further, the juvenile witnesses are free to resort to whatever protections law enforcement may be willing and able to provide.

[¶16] In sum, while this Court understands the district court's concern with protecting the juvenile witnesses from threats, we conclude the prior restraint imposed here is not an effective method of protecting the threatened juveniles, when their identities are known to the perpetrators of the threats. Additionally, confidence and comfort must be taken in the fact that there are other protections in place to protect the juveniles. Thus, this Court concludes this is not the sort of exceptional case where the district court's prior restraint survives First Amendment review. It is, therefore,

[¶17]   **ORDERED** that the Petition for Writ of Review, filed herein August 12, 2015, be, and hereby is, granted in full; and it is further

[¶18]   **ORDERED** that the provision contained in the first sentence of paragraph 6 of the district court's August 12, 2015, "Order Concerning Media Access During Trial" pertaining to the release of the names of juvenile witnesses, is hereby reversed and vacated.

[¶19]   **DATED** this 18th day of August, 2015.

BY THE COURT:*

/s/

**E. JAMES BURKE**
**Chief Justice**

*Original order signed on August 17, 2015.  This order has been formatted for publication.