BOOMGAARDEN, Justice.
[¶1] Appellant, Catherine Mahoney, applied for unemployment insurance after the City of Gillette (City) terminated her employment. The Unemployment Insurance Commission (Commission) denied her application and the district court affirmed the Commission's decision. Ms. Mahoney argues on appeal, first, that the Commission lacked substantial evidence to conclude she committed misconduct connected with her work, and, second, that the City violated her First Amendment rights when it dismissed her for constitutionally protected speech. Finding neither argument persuasive, we affirm.
ISSUES
[¶2] We rephrase Ms. Mahoney's issues:
1. Was there substantial evidence to support the Commission's determination that Ms. Mahoney engaged in misconduct connected with her work?
2. Did the City violate Ms. Mahoney's First Amendment rights when it terminated her employment?
FACTS
[¶3] Ms. Mahoney worked at-will as a communications technician (dispatcher) for the City's police department (Department) for over seven years. On two different occasions during the course of her employment, Ms. Mahoney contacted the City's human resources department and the City's administrator about concerns she had with her supervisors and work environment. The response she received on both occasions was *447 to "give it some time." Dissatisfied by these responses, Ms. Mahoney contacted a member of the city council and the two discussed Ms. Mahoney's concerns, which included a hostile work environment, harassment, poor training programs, and unorganized and unprofessional supervision-all of which Ms. Mahoney attributed to a lack of leadership. Their first two meetings occurred in October and November 2016. The council member told Ms. Mahoney he would try to help her, but he needed documents regarding her concerns. They met a second time in November, together with other dispatchers, and Ms. Mahoney gave the council member some documents. Ms. Mahoney also gave the council member a letter indicating why she and other employees were coming to discuss concerns with him. She signed the letter "on behalf of the Police Dispatch Employees" and included her job title.
[¶4] In early December, Ms. Mahoney emailed herself (at her work account) correspondence and attached documents to give to the council member at their next meeting. Among the email's attachments, Ms. Mahoney sent confidential tables the Department maintained to show registered alarms in the City. Ms. Mahoney believed it was the Department's policy not to respond to calls from unregistered alarm systems. She thought that her supervisor was not correctly updating the tables and the failure to do so posed a safety risk to the City and its residents if the police ever failed to respond to a call from an alarm that was registered, but appeared not to be according to the tables. The tables listed residential and commercial alarms along with personal identifying information, including names, addresses, phone numbers, social security numbers, and birth dates. Ms. Mahoney did not redact this information before emailing it to herself or before she gave the council member copies of the emailed documents on December 14, 2016.[1]
[¶5] In late December, the chief of police discovered the email Ms. Mahoney had sent to herself. The chief launched an investigation into the email and met with Ms. Mahoney in early February. Ms. Mahoney admitted she had given the tables to the council member. At the conclusion of his investigation, the chief determined Ms. Mahoney had violated numerous City and Department policies-policies of which Ms. Mahoney acknowledged she was aware.
[¶6] The City dismissed Ms. Mahoney on February 8, 2017. She applied for unemployment insurance and her application proceeded through four tiers of review. The Unemployment Insurance Division of the Department of Workforce Services initially denied Ms. Mahoney's application, but an Appeals Division hearing officer reversed that denial after a contested case hearing. The City then appealed to the Commission, which reversed the hearing officer's decision. The Commission found Ms. Mahoney knew of, but intentionally disregarded City and Department policies and procedures. The Commission concluded that Ms. Mahoney was terminated for misconduct connected with her work and denied her benefits. Ms. Mahoney appealed and the district court affirmed the Commission's order after considering whether substantial evidence supported the Commission's decision and whether that decision violated Ms. Mahoney's free speech rights.[2] Ms. Mahoney timely appealed the district court's order.
STANDARD OF REVIEW
[¶7] In unemployment insurance cases, we review the Commission's decision "without considering the decisions of the deputy, the hearing officer or the district court." Clark v. State ex rel., Dep't of Workforce Servs. , 2016 WY 89, ¶ 8, 378 P.3d 310, 312 (Wyo. 2016) (citing State ex rel. Dep't of Workforce Servs., Unemployment Ins. Comm'n v. Kinneman , 2016 WY 79, ¶ 11, 377 P.3d 776 (Wyo. 2016) ). The Commission is an administrative agency, whose decision we review *448 under Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2017):
(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
(i) Compel agency action unlawfully withheld or unreasonably delayed; and
(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
(B) Contrary to constitutional right, power, privilege or immunity;
(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;
(D) Without observance of procedure required by law; or
(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.
[¶8] "Unemployment benefit cases where misconduct is alleged present mixed questions of law and fact." Clark , ¶ 10, 378 P.3d at 313 (quoting Aspen Ridge Law Offices, P.C. v. Wyo. Dep't of Employment, Unemployment Ins. Comm'n , 2006 WY 129, ¶ 11, 143 P.3d 911, 916 (Wyo. 2006) ). We review the Commission's conclusions of law de novo. Id. ¶ 9, 378 P.3d at 313 (citations omitted). We review the Commission's findings of fact under the substantial evidence standard. Id. (citations omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Id. (quoting Bush v. State ex rel. Wyo. Workers' Comp. Div. , 2005 WY 120, ¶ 5, 120 P.3d 176, 179 (Wyo. 2005) ). Substantial evidence supports findings of fact "when we can discern a rational premise for those findings from the evidence preserved in the record." Id. (citing Bush , ¶ 5, 120 P.3d at 179 ). "We give great deference to the Commission's findings of fact in light of its expertise and extensive experience in employment matters." In re Ringrose , 2013 WY 68, ¶ 9, 302 P.3d 900, 903 (Wyo. 2013) (quoting Weidner v. Life Care Centers of America , 893 P.2d 706, 710 (Wyo. 1995) ). "[O]ur review of any particular decision turns not on whether we agree with the outcome, but on whether the agency could reasonably conclude as it did[ ] based on all the evidence before it." Doggett v. Wyoming Dep't of Workforce Servs., Unemployment Ins. Comm'n , 2014 WY 119, ¶ 7, 334 P.3d 1231, 1234 (Wyo. 2014) (quoting Davenport v. State ex rel. Wyoming Workers' Safety and Compensation Div. , 2012 WY 6, ¶ 12, 268 P.3d 1038, 1042 (Wyo. 2012) ).
[¶9] "Constitutional challenges present issues of law that we review de novo. " Cheyenne Newspapers, Inc. v. First Judicial Dist. Court , 2015 WY 113, ¶ 6, 358 P.3d 493, 495 (Wyo. 2015) (citing Operation Save Am. v. City of Jackson, 2012 WY 51, ¶ 17, 275 P.3d 438, 447 (Wyo. 2012) ). If we determine the Commission's decision is "contrary to constitutional right, power, privilege or immunity," we must set it aside. Wyo. Stat. Ann. § 16-3-114(c)(ii)(B) ; Mekss v. Wyoming Girls' Sch., State of Wyo. , 813 P.2d 185, 193 (Wyo. 1991).
DISCUSSION
I. Misconduct Connected with Work
[¶10] The Commission denied Ms. Mahoney's claim for benefits after it concluded the City discharged her because she violated numerous employer policies when she provided the alarm registration tables to persons unauthorized to see them. The Commission determined that Ms. Mahoney "intentionally disregarded" those policies and procedures and that her actions constituted "misconduct connected with work." Ms. Mahoney argues that, although she may have violated certain policies, the record does not show she intentionally disregarded or violated the policies and, therefore, the Commission lacked substantial *449 evidence to conclude she was discharged for misconduct connected with work.
[¶11] Wyo. Stat. Ann. § 27-3-311(f) (LexisNexis 2017) states:
(f) An individual shall be disqualified from benefit entitlement beginning with the effective date of an otherwise valid claim or the week during which the failure occurred, until he has been employed in an employee-employer relationship and has earned at least twelve (12) times the weekly benefit amount of his current claim for services after that date, if the department finds that he was discharged from his most recent work for misconduct connected with his work.
(Emphasis added.) The legislature defines "misconduct connected with work" as "an act of an employee which indicates an intentional disregard of the employer's interests or the commonly accepted duties, obligations and responsibilities of an employee." Wyo. Stat. Ann. § 27-3-102(a)(xxiv) (LexisNexis 2017) (emphasis added). To determine whether substantial evidence supports a finding of misconduct, we evaluate the employee's conduct in the context of her particular employment situation. Clark , ¶ 29, 378 P.3d at 318 (citations omitted). Because we interpret unemployment statutes liberally in favor of claimants, "[w]e construe the term misconduct in a manner least favorable to working a forfeiture because unemployment compensation is part of an employee's compensation, not a gratuity which may be withheld frivolously." Id. ¶ 13, 378 P.3d at 314 (citations omitted) (internal quotation marks omitted). "The rule of liberal interpretation, however, cannot override the legislature's clear intent." Id. (citations omitted).
[¶12] "When an employer contends that violation of its rule constitutes misconduct, the employer bears the burden of establishing the existence of the rule and its violation." Wyo. Dep't of Employment, Div. of Unemployment Ins. v. Rissler & McMurry Co. , 837 P.2d 686, 690 (Wyo. 1992). "If the employer establishes these elements, the burden shifts to the employee to demonstrate either that the violation was justified or that the rule was unreasonable." Id. (citing in 76 Am. Jur. 2d Unemployment Compensation § 81 (2d ed. 1991) ).
[¶13] The Commission concluded that the City met its burden and we agree. First, the City established that it had "a policy prohibiting employees from providing, without express authorization, confidential information to anyone not authorized to receive it." Section 3.6 of the City's policy handbook specifically required, "Except for information deemed to be public under federal and state law, information about City of Gillette employees, customers, suppliers and vendors is to be kept confidential and divulged to individuals within the City with both a need to receive and authorization to receive the information." That policy further mandated, "Confidential information may not be removed from the City property without express authorization." Department policies also prohibited employees from removing any official Department records, "except as authorized by the chief of police or under due process of law." The Department prohibited employees from divulging "to any person not connected with the department information acquired by their employment if the information might discredit or imperil the efficiency of the department, unless under due process of law, departmental order, or an order of a commanding officer." The Department further required employees to report alleged policy violations, and to do so by submitting a written memorandum through their chain of command (either to their immediate supervisor or the police chief).
[¶14] Second, the City established that Ms. Mahoney violated City and Department policies on distributing confidential information. The Department's alarm registration tables contained confidential personal identifying information, such as names, addresses, phone numbers, social security numbers, and birth dates. Ms. Mahoney gave unredacted copies of the tables to the council member, who was not authorized to receive them. The police chief testified-and Ms. Mahoney admitted-that neither he nor a court order directed Ms. Mahoney to provide the confidential information to the council member. She also admitted that she had not received permission from her supervisors or the director of *450 human resources to disclose the information. The council member, in turn, testified that he was not a city employee, and the City demonstrated through policies and testimony that the council member was not otherwise authorized to review the confidential tables. The record also contains testimony that Ms. Mahoney did not formally report her concerns about the confidential tables in accordance with the Department's reporting policies.
[¶15] To satisfy her burden, Ms. Mahoney argues that any violation of the City's and Department's policies was unintentional and justifiable. She testified that she did not provide the alarm registration tables to the council member for the purpose of disclosing confidential information. In fact, she stated that she had not noticed that the tables contained confidential information when she disclosed them to the council member. She also believed that the council member was authorized to see those records. She claimed she provided the tables to the council member out of concern that the allegedly out-of-date tables posed a risk to the City and its residents.[3] The council member testified that he believed Ms. Mahoney was just trying to correct a problem she saw, and she was not acting against the City's interests.
[¶16] After evaluating the record, the Commission determined that Ms. Mahoney "intentionally disregarded" applicable policies and that her actions amounted to misconduct. We review the Commission's decision by returning to the statutory definition of "misconduct connected with work." Wyo. Stat. Ann. § 27-3-102(a)(xxiv). As we have held, and the Commission recognized, the legislature did not define "misconduct connected with work" to require that an employee "specifically intend to violate [her] employer's directives." Clark , ¶ 15, 378 P.3d at 314. "Instead, the employee's act must indicate an intentional disregard of the employer's interest." Id. (emphasis in original). "[A]n action that shows or is a sign of the employee's intent to disregard his duties or the employer's interest is sufficient to meet the statutory definition of misconduct." Id.
[¶17] The record supports the Commission's determination, consistent with the legislature's definition, that Ms. Mahoney "intentionally disregarded" her employer's policies. The evidence clearly establishes that Ms. Mahoney was aware of City and Department policies and chose to violate them anyway. In early 2016, Ms. Mahoney signed an "acknowledgment of receipt" attesting that she had received the Department's updated policy manual. She later acknowledged receipt of the City's employee handbook. Ms. Mahoney admitted at the hearing that she provided the confidential tables to the council member without obtaining prior authorization. She also did not report her safety concerns to her supervisors, the police chief, or the city administrator before she raised them with the council member.[4] The record shows Ms. Mahoney's policy violations did not amount to an isolated, excusable incident, as the employee disciplinary report the City provided Ms. Mahoney on discharge shows that she was reminded on three previous occasions to report her workplace concerns through her chain of command. Cf. Aspen Ridge Law Offices , ¶ 18, 143 P.3d at 917-18 (holding that an employee's conduct was "an isolated instance of ordinary negligence which did not constitute misconduct" and noting that the employer failed to point to evidence that the employee's conduct "was more than an isolated incident"). Ms. Mahoney admitted having received these reminders and testified that she was aware that violating these reporting policies could result in termination of her employment.
[¶18] Substantial evidence supports the Commission's finding that Ms. Mahoney showed an intentional disregard for the City's and Department's interests in protecting confidential information and maintaining *451 its chain of command to address reported policy violations. We therefore uphold the Commission's decision to deny Ms. Mahoney benefits because the City terminated her for "misconduct connected with work."
II. Free Speech Protections Under the First Amendment
[¶19] Ms. Mahoney asserts that her communication with the council member about the safety risks of not properly updating the alarm registration tables was political and publicly-minded speech protected under the First Amendment of the United States Constitution, and that disclosing the alarm registration data to the council member was an inextricable part of her protected speech.[5] She argues that the City violated her constitutional rights when it terminated her for disclosing the tables and, because her termination was impermissible, the Commission further violated her constitutional rights when it denied her benefits because of the unlawful termination. Ms. Mahoney therefore asks us to set aside the Commission's decision as "contrary to constitutional right, power, privilege or immunity" under Wyo. Stat. Ann. § 16-3-114(c)(ii)(B).
[¶20] In considering Ms. Mahoney's constitutional claim, we note first that the City terminated Ms. Mahoney for her misconduct connected with work. That Ms. Mahoney's conduct constitutes "speech" under the First Amendment is not a foregone conclusion. However, even if her act of disclosing confidential information without authorization constitutes "speech," we conclude that neither the City nor the Commission infringed on Ms. Mahoney's First Amendment rights.
[¶21] We acknowledge that "[p]ublic employees do not surrender all their First Amendment rights by reason of their employment." Garcetti v. Ceballos , 547 U.S. 410, 417, 126 S.Ct. 1951, 1957, 164 L.Ed.2d 689 (2006). Nonetheless, "First Amendment protection of a public employee's speech depends on a careful balance 'between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.' " Lane v. Franks , 573 U.S. 228, 231, 134 S.Ct. 2369, 2374, 189 L.Ed.2d 312 (2014) (quoting Pickering v. Board of Ed. of Township High School Dist. 205, Will Cty. , 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968) ).
[¶22] The Tenth Circuit Court of Appeals has articulated a five-prong test to balance those interests as the United States Supreme Court instructed in Pickering and Garcetti :
(1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.
Dixon v. Kirkpatrick , 553 F.3d 1294, 1302 (10th Cir. 2009) (citing Brammer-Hoelter v. Twin Peaks Charter Academy , 492 F.3d 1192, 1202-03 (10th Cir. 2007) ).[6] The first *452 three prongs present issues of law; the last two are issues of fact. Brammer-Hoelter , 492 F.3d at 1203 (citing Cragg v. City of Osawatomie , 143 F.3d 1343, 1346 (10th Cir. 1998) ). We conclude that the third prong-whether the government employer's interests are sufficient to outweigh the employee's free speech interests-is dispositive of Ms. Mahoney's claim.[7] See Mekss , 813 P.2d at 198 (proceeding to the balancing of interests prong "without deciding" whether Mekss satisfied the public concern prong); Rohrbough v. Univ. of Colorado Hosp. Auth. , 596 F.3d 741, 750 (10th Cir. 2010) (stating the court need not resolve whether employee satisfied the first prong "because her claim cannot survive the fourth prong of the Garcetti / Pickering analysis.").
[¶23] When weighing an employee's free speech interest against an employer's interest in an efficient and disciplined work environment, the employer has the burden of proving it has an efficiency interest that would justify it in restricting the particular speech at issue. Brammer-Hoelter , 492 F.3d at 1207 (citations omitted); see Connick v. Myers , 461 U.S. 138, 150, 103 S.Ct. 1684, 1691-92, 75 L.Ed.2d 708 (1983). We balance these interests by considering "[w]hether the statement impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." Mekss , 813 P.2d at 199 (quoting Schalk , 906 F.2d at 496 ). We also consider "the manner, time, and place of the employee's expression, as well as the context in which the dispute arose." Id. (quoting Schalk , 906 F.2d at 496 ).
[¶24] Here, the City's and Department's interests in restricting Ms. Mahoney's disclosure of confidential information include compliance with their general legal duty to protect information in their possession. See, e.g. , Wyo. Stat. Ann. § 16-4-203 (LexisNexis 2017) (governing restrictions on the disclosure of public records). The City's and the Department's interests also include protecting individuals from identity theft, fraud, or other direct harms that could result from employees disclosing confidential information, such as the personal identifying information in the alarm registration tables. The City and the Department defend these interests through their formal policies and through comprehensive, pre-hiring background checks-including polygraph and psychological examinations-for Ms. Mahoney and other employees who have regular access to sensitive, confidential information.
[¶25] The Department also has interests in maintaining a chain of command and preventing disruptions-interests generally recognized to be greater here than for governmental entities unrelated to law enforcement. In Mekss , we found guidance in Warner v. Town of Ocean City , 81 Md. App. 176, 567 A.2d 160 (1989) and its recognition of "the considerable importance of discipline, harmony, and loyalty in a law enforcement organizationz[.]" 813 P.2d at 195-96. The Tenth Circuit Court of Appeals has also recognized that the need to "maintain discipline by superiors and harmony among co-workers ... is particularly acute in the context of law enforcement," which has a "heightened interest ... in maintaining discipline and harmony among employees." Moore v. City of Wynnewood , 57 F.3d 924, 934 (10th Cir. 1995) (citations and internal quotation marks omitted). "When close working relationships are essential to fulfilling public responsibilities, a wide degree of deference to the employer's judgment is appropriate." Connick , 461 U.S. at 151-52, 103 S.Ct. at 1692 ; see also Conaway v. Smith , 853 F.2d 789, 798 (10th Cir. 1988) (citing Jurgensen v. Fairfax County, Va. , 745 F.2d 868, 880 (4th Cir. 1984) ) (using a police department as an example where "[p]rotecting an employer's interest in preventing disruptions in the office or interference with department functions is most important in an agency where loyalty and confidence are essential to close working relationships.").
[¶26] It is against these heightened interests that we must weigh Ms. Mahoney's interests *453 in bypassing her chain of command and disclosing the alarm registration tables. The record demonstrates that Ms. Mahoney disclosed the tables containing confidential information, at least in part, out of a concern for the public's safety. However, the fact that she did not notice that the tables contained confidential information belies any assertion that Ms. Mahoney believed it was necessary to disclose that information in order to explain her concerns to the council member. Instead, she risked harm to the City, the Department, and the individuals whose personal information was contained in the tables when she disclosed confidential information merely to show that her supervisor was not updating alarm registrations. The record further demonstrates that Ms. Mahoney's concern that the Department did not respond to calls from unregistered alarms was unsupported. The police chief testified that the Department responded to calls regardless of whether the Department's records indicated an alarm was registered. Moreover, Ms. Mahoney had an available, and mandatory , internal reporting process through which Department leadership could have addressed her misunderstanding about Department practices and ensured the tables were properly updated. Ms. Mahoney knew of the internal reporting process but chose to disregard it. See Mekss , 813 P.2d at 203 (concluding employee was insubordinate because she had access to internal grievance procedures under personnel rules and she chose not to use them). Similar to the circumstances in Mekss , any First Amendment interest Ms. Mahoney might have had "does not require that the [City and the Department] tolerate this action which reasonably could be expected to disrupt operations, undermine authority, and destroy close working relationships." Id. at 200. Considering the manner, time, and place of Ms. Mahoney's statements and the context in which her termination occurred, the balance of interests tips heavily in the City's and the Department's favor. Consequently, we conclude that the City did not infringe on Ms. Mahoney's First Amendment rights when it terminated her employment. The Commission's denial of unemployment benefits withstands Ms. Mahoney's constitutional challenge.
CONCLUSION
[¶27] We affirm the Commission's decision to deny Ms. Mahoney's application for unemployment insurance benefits because substantial evidence supports the Commission's determination that she was discharged for misconduct connected with her work. Because the City's and Department's interests in restricting the disclosure of confidential information and enforcing a chain of command for the reporting of concerns and suspected policy violations outweighed Ms. Mahoney's free speech interests, we conclude the City did not infringe on her First Amendment rights. We therefore reject Ms. Mahoney's claim that the Commission's decision is unconstitutional.
[¶28] Affirmed.

After Ms. Mahoney gave him the documents, the council member showed them to another member of the council before ultimately giving them to the City's administrator.

Ms. Mahoney raised her constitutional issue during the administrative hearing. Cf. Davis v. City of Cheyenne , 2004 WY 43, ¶ 27, 88 P.3d 481, 490 (Wyo. 2004) (declining to consider a First Amendment claim on appeal because the appellant did not raise the claim before the agency).

Ms. Mahoney's letter to the council member did not specifically mention any concerns related to the Department's alarm registration records.

Ms. Mahoney testified that she emailed her supervisor once to update the alarm registration tables, although that email was not offered as evidence. Nonetheless, she admitted that she did not report her concerns about the outdated tables through the chain of command, as required.

We recognized in Mekss that, "Article 1, Section 20, of the Constitution of the State of Wyoming also guarantees to every person the right of freedom of speech." 813 P.2d at 193. However, as in Mekss , Ms. Mahoney does not raise a separate free speech argument under the Wyoming Constitution and, therefore, we focus our analysis on the First Amendment. See id. at 199-200.

The Tenth Circuit's five-prong analysis updates the four-prong test we applied in Mekss , which pre-dated Garcetti . See Mekss , 813 P.2d at 194 (adopting the test summarized in Schalk v. Gallemore , 906 F.2d 491, 494-95 (10th Cir. 1990) ). The Mekss test required:
First, the court must decide whether the speech at issue touches on a matter of public concern. If it does, the court must balance the interest of the employee in making the statement against the employer's interest in promoting the efficiency of the public services it performs through its employees. Third, if the preceding prerequisites are met, the speech is protected, and plaintiff must show her expression was a motivating factor in the detrimental employment decision. Finally, if the plaintiff sustains this burden, the employer can still prevail if it shows by a preponderance of the evidence that it would have made the same decision regardless of the protected speech.
Id. at 194 (quoting Schalk , 906 F.2d at 494-95 ) (internal citations and quotation marks omitted).

For the purpose of this opinion only, we assume, without deciding, that Ms. Mahoney could satisfy prongs one and two.