2016 WY 79

**STATE of Wyoming, ex rel., Department of Workforce Services, Unemployment Insurance Commission, Appellant (Respondent),**

v.

**Susan M. KINNEMAN, Appellee (Petitioner).**

S-15-0289

Supreme Court of Wyoming.

August 10, 2016

Representing Appellant/Respondent: Peter K. Michael, Wyoming Attorney General; John D. Rossetti, Deputy Attorney General; Michael J. Finn, Senior Assistant Attorney General; Charlotte M. Powers, Assistant Attorney General.

Representing Appellee/Petitioner: Cynthia Van Vleet, Wind River Law Center, P.C., Riverton, Wyoming.

Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.

KAUTZ, Justice.

[¶1] After she was discharged from her position as high school principal of the St. Stephens Indian School near Riverton, Wyoming, Appellee/Petitioner Susan M. Kinneman applied for unemployment insurance benefits. Appellant/Respondent State of Wyoming ex rel. Department of Workforce Services, Unemployment Insurance Commission (the Commission) denied her request because it determined she had been fired for misconduct connected with her work. Ms. Kinneman filed a petition for judicial review, and the district court reversed, concluding the Commission's decision was not supported by substantial evidence. The Commission challenges the district court's decision on appeal.

[¶2] We affirm.

## ISSUE

[¶3] The Commission presents the following appellate issue:

An individual terminated for misconduct connected with her work cannot receive unemployment insurance benefits. The Unemployment Insurance Commission denied Susan Kinneman's claim for benefits because she was discharged for misconduct committed when she failed to promptly initiate a formal assessment of a student despite her recognized duty to assess the student. Did the District Court err in reversing the Commission's decision as not supported by substantial evidence?

Although she phrases it somewhat differently, Ms. Kinneman presents essentially the same issue on appeal.

## FACTS

[¶4] The St. Stephens Indian School (hereinafter referred to as "the school") hired Ms. Kinneman in 2012 to serve as the dean of students. In early 2013, she was promoted to high school principal and continued in that position until September 2014. Elma Brown became the superintendent of the school in July 2014.

[¶5] Classes began on August 18, 2014, and shortly thereafter, on August 26, 2014, Ms. Brown placed Ms. Kinneman on an "action plan" to improve her performance, after learning that Ms. Kinneman was having problems with her secretary and had failed to inform Ms. Brown about a fight at school. The action plan focused on helping Ms. Kinneman improve her communication with students, staff, other stakeholders, and Ms. Brown. As part of the plan, Ms. Kinneman was required to inform Ms. Brown of any important matters regarding the school.

[¶6] On August 28, 2014, the guidance counselor reported to Ms. Kinneman that a high school senior appeared to be overly tired. Although the counselor listed drugs or alcohol as two of the many reasons a student may be fatigued, she did not state that she believed the student was drunk. In fact, she specifically stated that she did not know the cause of the student's tiredness. Ms. Kinneman located the student in the hallway. After observing her, Ms. Kinneman concluded she looked tired, like she might be "under the influence possibly of cold medicine or that she might have been up late," but Ms. Kinneman did not believe the girl was drunk.

[¶7] Nevertheless, because of the guidance counselor's report, Ms. Kinneman knew that she needed to have the student assessed. She asked her secretary to contact the school nurse to perform a "quiet assessment" because she did not want to embarrass the student. The secretary stated that the nurse was not available. Although Ms. Kinneman knew there were other staff members in the district who could perform an assessment, she decided to contact Ms. Brown to determine the "next step." Ms. Kinneman directed her secretary to call the superintendent, but Ms. Brown was not available.

[¶8] At that point, Ms. Kinneman said she was not going to assess the student at that time and was leaving the school for a while. There is considerable dispute in the record as to whether Ms. Kinneman left campus or visited another building on campus. There is also a discrepancy about the length of time she was gone from the high school. Ms. Kinneman stated that she was gone only fifteen minutes and others stated that she was gone approximately forty-five minutes. In any event, by the time Ms. Kinneman returned to the high school, her secretary had contacted Ms. Brown and informed her there was a potentially drunk student at the high school. Ms. Brown arrived at the school shortly thereafter.

[¶9] Ms. Brown pulled the student out of class, took her to the elementary school nurse's office and performed an assessment, which did not indicate the student was intoxicated. The school resource officer performed two breathalyzer tests to detect the presence of alcohol, which were also negative. Shortly thereafter, Ms. Brown launched an investigation into Ms. Kinneman's handling of the situation. A few days later, on September 2, 2014, Ms. Brown gave Ms. Kinneman a letter of termination, which stated that she had committed "gross negligence" by not promptly assessing a student who was potentially intoxicated and allowing the student to remain in class while Ms. Kinneman left the building.

[¶10] Ms. Kinneman applied for unemployment insurance benefits. A deputy for the Unemployment Insurance Division denied her claim after determining she was discharged for misconduct connected with her work. She appealed, and a hearing officer for the Wyoming Department of Workforce Services Appeals Division held a contested case hearing. The hearing officer ruled that Ms. Kinneman was discharged from her employment, but not for misconduct connected with her work. The school appealed to the Commission, which reviewed the hearing transcript but did not take any new evi-

dence.[1] The Commission concluded that Ms. Kinneman was not entitled to benefits because she had been "discharged for an instance of negligence of such a degree to constitute misconduct." Ms. Kinneman filed a petition for judicial review, and the district court reversed, concluding that the Commission's decision was not supported by substantial evidence. The Commission appealed to this Court.

## STANDARD OF REVIEW

[¶11] In unemployment insurance cases, we review the decision of the Commission; the decisions of the deputy, the hearing officer and the district court are not relevant to our analysis. *Koch v. Dep't of Employment, Unemployment Ins. Comm'n,* 2013 WY 12, ¶ 15, 294 P.3d 888, 892 (Wyo. 2013). Given the Commission is an administrative agency, our review is governed by Wyo. Stat. Ann. § 16–3–114(c) (LexisNexis 2015):

(c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

(i) Compel agency action unlawfully withheld or unreasonably delayed; and

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

---

1. "The Commission may review the evidence submitted before the appeal tribunal or may direct that additional evidence be taken. Wyo. Stat. Ann. § 27–3–404(a) (LexisNexis 2011).... Based upon the evidence, the Commission may affirm, modify, or reverse the findings and conclusions of the appeal tribunal." *Koch v. Dep't of Employment, Unemployment Ins. Comm'n,* 2013 WY 12, ¶ 15, 294 P.3d 888, 892 (Wyo. 2013).

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

[¶12] We examine the agency's findings of fact by applying the substantial evidence standard. *Dale v. S & S Builders, LLC,* 2008 WY 84, ¶ 22, 188 P.3d 554, 561 (Wyo. 2008); Section 16–3–114(c). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bush v. State ex rel. Wyo. Workers' Comp. Div.,* 2005 WY 120, ¶ 5, 120 P.3d 176, 179 (Wyo. 2005) (citation omitted). Findings of fact are supported by substantial evidence when we can discern a rational premise for the findings from the evidence preserved in the record. *Id.* An agency's conclusions of law are, however, reviewed *de novo. Moss v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2010 WY 66, ¶ 11, 232 P.3d 1, 4 (Wyo. 2010); *Dale,* ¶ 26, 188 P.3d at 561–62.

[¶13] "Unemployment benefit cases where misconduct is alleged present mixed questions of law and fact." *Aspen Ridge Law Offices, P.C. v. Wyo. Dep't of Employment, Unemployment Ins. Comm'n,* 2006 WY 129, ¶ 11, 143 P.3d 911, 916 (Wyo. 2006), citing *Hat Six Homes v. State, D.O.E.,* 6 P.3d 1287, 1291 (Wyo. 2000). When reviewing the Commission's decision, we also keep in mind that unemployment statutes are interpreted liberally in favor of claimants. *Wyo. Dep't of Employment, Div. of Unemployment Ins. v. Rissler & McMurry Co.,* 837 P.2d 686, 690 (Wyo. 1992). "We construe the term misconduct 'in a manner least favorable to working a forfeiture' because unemployment compensation is part of an employee's compensation, not 'a gratuity which may be withheld frivolously.'" *Aspen Ridge,* ¶ 16, 143 P.3d at 917, quoting *Rissler & McMurry Co.,* 837 P.2d at 690.

## DISCUSSION

[¶14] Pursuant to Wyo. Stat. Ann. § 27–3–311(f) (LexisNexis 2015), a claimant is disqualified from unemployment benefits if he or she was discharged for work-related misconduct:

(f) **An individual shall be disqualified from benefit entitlement** beginning with the effective date of an otherwise valid claim or the week during which the failure occurred, until he has been employed in an employee-employer relationship and has earned at least twelve (12) times the weekly benefit amount of his current claim for services after that date, **if the department finds that he was discharged from his most recent work for misconduct connected with his work.**

(Emphasis added). Effective July 1, 2014, the legislature adopted the following definition of "misconduct connected with work":

(xxiv) "Misconduct connected with work" means an act of an employee which indicates an intentional disregard of the employer's interests or the commonly accepted duties, obligations and responsibilities of an employee. "Misconduct connected with work" does not include:

(A) Ordinary negligence in isolated instances;

(B) Good faith errors in judgment or discretion;

(C) Inefficiency or failure in good performance as the result of inability or incapacity.

Wyo. Stat. Ann. § 27–3–102(a)(xxiv) (Lexis-Nexis 2015).

[¶15] The preamble to the 2014 legislation states that the statutory definition is meant to codify existing case law "defining misconduct connected with work for purposes of disqualification from benefit entitlement." 2014 Wyo. Sess. Laws 360. The following quote from *State of Wyo., Dep't of Employment, Unemployment Ins. Comm'n v. Laramie County (In re Ringrose),* 2013 WY 68, 302 P.3d 900 (Wyo. 2013), demonstrates the similarities between our precedent and the statutory definition of "misconduct connected with work":

"Misconduct under the Wyoming Employment Security Law means generally an act of an employee which indicates a

disregard of (1) the employer's interests or (2) the commonly accepted duties, obligations and responsibilities of an employee. This would include carelessness or negligence of such degree or recurrence as to reveal willful intent or an intentional disregard of the employer's interests or of the employee's duties and obligations to his employer. Inefficiency or failure in good performance as the result of inability or incapacity; ordinary negligence in isolated instances. or good faith errors in judgment or discretion are not deemed to be misconduct within the meaning of the Law."

*Id.*, ¶ 12, 302 P.3d at 903, quoting *Safety Medical Servs., Inc. v. Employment Security Comm'n*, 724 P.2d 468, 472–73 (Wyo. 1986). Consequently, Wyoming cases predating the legislative codification of the definition are relevant to our analysis.

■ [¶16] The Commission made the following conclusions of law regarding Ms. Kinneman's claim:

A.  The claimant was discharged from her most recent work.

B.  The claimant was discharged[ ] because she failed to initiate an assessment of a student suspected of being drunk in a timely manner and left the high school without assessing or otherwise supervising the possibly intoxicated student.

C.  Although the employer has no specific policy or procedures [2] for dealing with a student suspected of intoxication, the claimant was responsible to the students and staff to exercise good judgment as the high school principal. The claimant testified that she knew the student needed to be assessed when the matter was brought to her

attention by the guidance counselor at noon on August 28, 2014.

D.  The claimant admitted that she could not properly assess the student by herself, but did not make finding a staff member who could assess the student a priority.

E.  By leaving a potentially drunk student at the high school without informing anyone, or taking any direct action to initiate an assessment of the student, the claimant failed to mitigate the risk of harm posed to the student herself, the other students at the school and school staff if the student had in fact been intoxicated.

F.  Claimant testified that she left the high school building on August 28, 2014, from 12:00 to 12:15 P.M. and that the superintendent arrive[d] shortly after she returned. This contradicts the testimony of the superintendent, who testified that she was not notified about the student until sometime between 1:00 and 1:30 P.M. The claimant's testimony also contradicts the testimony of the claimant's secretary, who testified that the claimant was gone for at least 45 minutes. The claimant is also contradicted by her own testimony that the superintendent pulled the student out of class[ ] because the student was in her third period class by 12:30 P.M. The Commission does not find the claimant's testimony credible. The Commission instead finds that the claimant was absent from the school for at least 45 minutes and allowed the student to remain in the student body for at least an hour and a half after the claimant knew the student needed to be assessed.

---

2.  The following rule applies when an unemployment benefits case involves termination of employment for violation of an employment policy:

    "When an employer contends that violation of its rule constitutes misconduct, the employer bears the burden of establishing the existence of the rule and its violation. If the employer establishes these elements, the burden shifts to the employee to demonstrate either that the

violation was justified or that the rule was unreasonable." *Doggett v. Wyo. Dep't of Workforce Servs., Unemployment Ins. Comm'n*, 2014 WY 119, ¶ 10, 334 P.3d 1231, 1235 (Wyo. 2014), quoting *Rissler & McMurry Co.*, 837 P.2d at 690. This rule does not apply to the instant case because it is undisputed that the school did not have an established policy governing Ms. Kinneman's responsibilities under the circumstances presented here.

G. The claimant was discharged for an instance of negligence of such a degree to constitute misconduct.

(Footnote added).

[¶17] The Commission's decision was based upon its determination that a school employee had reported to Ms. Kinneman that the student was potentially drunk, resulting in a dire situation that required Ms. Kinneman to have the student assessed immediately. It stated in its findings of fact:

E. Around lunch time on August 28, 2014, a high school guidance counselor told the claimant that she was concerned about a high school senior who seemed overly tired and might be drunk.

[¶18] The Commission's finding that the guidance counselor reported to Ms. Kinneman that the student "might be drunk" is incorrect. The guidance counselor testified at the hearing that she noticed the student was trying to stay awake in homeroom. She told Ms. Kinneman she was concerned something was wrong with the student but testified, "I had no idea what; I didn't notice any other symptoms besides that she was falling asleep." The counselor also prepared a written statement which was admitted into evidence at the hearing. She stated the student was "trying to stay awake, but continuously closed her eyes and began to doze off, with her head jerking from falling asleep and then opening her eyes again." She believed the behavior was abnormal and told Ms. Kinneman about it after the class.

I proceeded to tell [Ms. Kinneman] the behavior I noticed. I stated that I did not know what was wrong with the student, but that it might be a good idea to visit with the student privately to see what might be causing the apparent fatigue. I reiterated that I did not know what was causing the behavior in the student, but that fatigue may be caused by numerous things, such as a poor night's sleep, medication issues, medical issues, drug or alcohol issues or any host of other issues and only a proper assessment can ascertain a cause.

The counselor mentioned "drug or alcohol issues" as two of the many possible causes of the student's fatigue. Although, as the infor-

mation was being passed from person to person, the possibility the student was drunk became the focus, the counselor did not report that specific concern to Ms. Kinneman. Under our standard of review, we accept the Commission's findings of fact if there is a rational premise for those findings from the evidence preserved in the record. *Bush*, ¶ 5, 120 P.3d at 179. The evidence in the record in this case does not support the Commission's finding that the counselor reported to Ms. Kinneman she suspected the student was drunk.

[¶19] Another important aspect of the Commission's decision was its conclusion that "[b]y leaving a potentially drunk student at the high school without informing anyone, or taking any direct action to initiate an assessment of the student, [Ms. Kinneman] failed to mitigate the risk of harm posed to the student herself, the other students at the school and school staff if the student had in fact been intoxicated." These conclusions, too, were based upon factual findings that are not supported by the record. Ms. Kinneman told her secretary about the situation and attempted to contact the school nurse and Ms. Brown before she left, but neither was available. Her secretary continued to try to get in touch with Ms. Brown while Ms. Kinneman was gone. During that time, the student was in her third period class under the supervision of the classroom teacher. Although Ms. Kinneman had not informed the teacher of the student's earlier abnormal behavior, he testified that the student was upset when she came to class that day because "they" thought that she was drunk and wanted to test her. He testified that he did not believe the student posed a threat to herself or others and his only concern was that she was visibly upset.

[¶20] It is undisputed that Ms. Kinneman knew the student needed to be assessed because of the counselor's report and she left the building without having a formal assessment performed on the student. However, the school did not have a particular protocol or procedure that must be used in such cases or a timeline for when the assessment had to be completed. The superintendent testified

that the school left those determinations to the principal's discretion.

[¶21] Ms. Kinneman exercised her discretion and decided to wait to hear from the superintendent before moving forward with an assessment. In the interim, she left the school building. In deciding on her course of action, she was informed by the specific circumstances of the situation:

- The counselor reported that the student was acting very tired, but she did not know the reason for the fatigue.
- The counselor did not report that she suspected the student was drunk.
- Based upon her personal observation, Ms. Kinneman did not believe the student was drunk.
- Ms. Kinneman knew the student needed to be assessed but wanted it done "quietly" to avoid embarrassing her.
- Ms. Kinneman was not trained to formally assess the student.
- The school nurse and the superintendent were not immediately available.
- The action plan required Ms. Kinneman to inform Ms. Brown of any serious matters.
- The student was safe in the classroom.
- Ms. Kinneman's secretary was aware of the situation and actively trying to contact the superintendent.

[¶22] As stated above, our review of the Commission's determination on misconduct involves mixed questions of fact and law and we apply the unemployment insurance law liberally in favor of the claimant. *Aspen Ridge*, ¶¶ 11, 16, 143 P.3d at 916–17. When the correct facts are applied to the law, it is clear that the record does not contain relevant evidence a reasonable mind might accept as adequate to support the Commission's conclusion that Ms. Kinneman intentionally disregarded the school's interests or her commonly accepted duties, obligations and responsibilities. Section 27–3–102(a)(xxiv); *Doggett*, ¶ 9, 334 P.3d at 1235. The decision about how to proceed after the guidance counselor's report was committed to Ms. Kinneman's discretion. She considered the facts and exercised her discretion in determining the course of action. Given the facts known to her, the situation was not dire and did not require immediate action. Consequently, Ms. Kinneman's decision to wait for the superintendent is understandable. Even if we accept the Commission's position that she should not have left the building and should have, instead, pulled the student out of class and contacted a different staff member to perform the assessment, her action was, at most, ordinary negligence in an isolated instance or a good faith error in judgment or discretion which are specifically excepted from the statutory definition of misconduct connected to work. Section 27–3–102(a)(xxiv)(A) & (B).

[¶23] A review of other unemployment benefits cases confirms the Commission's decision was erroneous. In *Ringrose*, ¶¶ 3–4, 16–19, 302 P.3d at 902, 905, Deputy Ringrose investigated an altercation that occurred while he was working off-duty security at a Cheyenne bar. The Sheriff's Department terminated his employment, in part, for failing to take pictures at the scene of the altercation and failing to follow up on the victim's condition after he was transported to the hospital. Although department policies required Deputy Ringrose to follow certain procedures when investigating crimes, there were no specific policies requiring crime scene pictures or a follow-up consultation with the victim and those responsibilities were not otherwise known to Deputy Ringrose. His failure to take those actions was, at most, a good faith inadvertent error. *Id. See also Aspen Ridge*, ¶ 17, 143 P.3d at 917 (law firm employee's failure to complete an attorney fees affidavit in a timely manner was not misconduct; rather, it was an isolated instance of ordinary negligence); *Wyo. Dep't of Employment, Unemployment Ins. Comm'n v. SF Phosphates, Ltd.*, 976 P.2d 199, 202 (Wyo. 1999) (employee's statement that a "bullet in the head would be too good" for a former manager was a good faith error in judgment but did not comprise misconduct so as to result in denial of unemployment benefits); *City of Casper v. Wyo. Dep't of Employment, Unemployment Ins. Div.*, 851 P.2d 1, 2–4 (Wyo. 1993) (employee who yelled at young subordinates and possibly made lewd comments committed good faith errors in

judgment, not misconduct connected with his work).

[¶24] On the other hand, in *Koch* the employee committed misconduct connected with his work by failing to remove snow from the walkways of the hotel where he worked. The employee was an engineer for the hotel and shoveling snow from walkways was "an outstanding expectation of the engineering position." *Koch*, ¶ 21, 294 P.3d at 894. The employee admitted that he was aware that one of his job duties was snow removal. Although the employee testified at the hearing that he had shoveled snow on the day in question, his manager testified that, just prior to being fired, the employee admitted he did not remove the snow. *Id.* The Commission found the manager more credible than the employee. *Id.*, ¶ 23, 294 P.3d at 894. Accepting the Commission's determination of credibility in accordance with our standard of review, we affirmed its decision that the employee committed misconduct connected with his work. *Id.*, ¶¶ 23–24, 294 P.3d at 894–95.

[¶25] Ms. Kinneman's situation is comparable to those in *Ringrose, Aspen Ridge, SF Phosphates* and *City of Casper* and distinguishable from *Koch*. While Ms. Kinneman knew an assessment needed to be performed because a staff member reported the student's unusual behavior, unlike Mr. Koch, she did not have a recognized duty to conduct the assessment using a particular protocol or within a specific period of time. Instead, she was expected to exercise good judgment in determining the proper course of action. Even if we assume for the sake of argument that Ms. Kinneman erred in exercising her discretion and there was a more appropriate way to address the situation, the record does not support a conclusion that her action was anything more than an isolated instance of ordinary negligence or a good faith error in judgment. *See Ringrose, SF Phosphates* and *City of Casper, supra.*

[¶26] We affirm the district court's reversal of the Commission's decision.