# IN THE SUPREME COURT, STATE OF WYOMING

## 2016 WY 89

APRIL TERM, A.D. 2016

September 1, 2016

BILLY CLARK,

Appellant
(Petitioner),

v.

STATE OF WYOMING, ex rel.,
DEPARTMENT OF WORKFORCE
SERVICES, UNEMPLOYMENT
INSURANCE COMMISSION,

Appellee
(Respondent).

S-16-0034

*Appeal from the District Court of Natrona County*
The Honorable W. Thomas Sullins, Judge

*Representing Appellant/Petitioner:*
    Keith R. Nachbar of Keith R. Nachbar, P.C., Casper, Wyoming.

*Representing Appellee/Respondent:*
    Peter K. Michael, Wyoming Attorney General; John D. Rossetti, Deputy Attorney General; Michael J. Finn, Senior Assistant Attorney General; Charlotte M. Powers, Assistant Attorney General.

*Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]   Appellant/Petitioner Billy Clark applied for unemployment insurance benefits after he was discharged from his position as a fuel truck driver for Homax Oil Sales, Inc. (Homax).   Appellee/Respondent State of Wyoming ex rel. Department of Workforce Services, Unemployment Insurance Commission (the Commission) denied his request for benefits on the basis that he was fired for misconduct connected with his work.   Mr. Clark filed a petition for judicial review of the Commission's decision, and the district court affirmed.

[¶2]   We, likewise, affirm.

## ISSUES

[¶3]    Two issues must be addressed in this appeal:

I.    Can serious and/or repeated negligence qualify as misconduct under Wyoming law?

II.    Was the Commission's decision that Mr. Clark committed misconduct connected with his work supported by substantial evidence?

## FACTS

[¶4]   Mr. Clark began work as a fuel truck driver for Homax in Casper and Evansville, Wyoming on July 21, 2014.   He delivered fuels to various locations, including Homax's convenience stores, with trucks that were compartmentalized so that different fuels could be hauled in the same load.   Once he reached his destination, Mr. Clark was responsible for unloading the fuels into the proper tanks.   When Mr. Clark was hired, his supervisor, Michael Dwyer, was aware that Mr. Clark had dispensed the wrong fuel into tanks at his previous job.   Mr. Dwyer warned Mr. Clark that "mixing product" was not acceptable and could result in termination from his job.   In addition, Homax trained Mr. Clark on the procedure for unloading product to avoid placing the wrong fuel in a tank.

[¶5]   Nevertheless, in August 2014, Mr. Clark mixed premium and regular unleaded gas during a delivery.   Homax was still able to sell the fuel, but Mr. Clark was reprimanded for his error.   Mr. Dwyer warned him that there would be no further chances if he unloaded fuel into the wrong tank again.

[¶6]   On September 14, 2014, Mr. Clark delivered fuel to one of Homax's convenience stores in Casper.   He incorrectly unloaded approximately 8,500 gallons of fuel, valued at approximately $25,000, by placing diesel fuel in the unleaded gasoline tank and unleaded

1

gasoline in the diesel fuel tank. When he realized his mistake, he called Mr. Dwyer and shut down the store to prevent customers from putting the wrong fuel in their vehicles. Mr. Dwyer arranged for the tainted fuel to be removed from the tanks at an approximate cost of $1,000. Mr. Clark continued to work as a fuel truck driver over the next week; however, when Mr. Dwyer consulted with the owner of the company about Mr. Clark's mistake, they decided to terminate his employment effective September 22, 2014.

[¶7] Mr. Clark applied for unemployment insurance benefits. A deputy for the Unemployment Insurance Division determined that he was entitled to unemployment insurance benefits. Homax challenged that determination, and a hearing officer for the Wyoming Department of Workforce Services Appeals Division held a contested case hearing. The hearing officer concluded that Mr. Clark was not entitled to unemployment insurance benefits because he was discharged for misconduct connected with his work. Mr. Clark appealed to the Commission, which also ruled he was disqualified from benefits. He then filed a petition for judicial review, and the district court affirmed the Commission's decision. Mr. Clark filed a timely notice of appeal to this Court.

**STANDARD OF REVIEW**

[¶8] In unemployment insurance cases, we review the decision of the Commission without considering the decisions of the deputy, the hearing officer or the district court. *State ex rel. Dep't of Workforce Servs., Unemployment Ins. Comm'n v. Kinneman,* 2016 WY 79, ¶ 11, ___ P.3d ____ (Wyo. 2016), citing *Koch v. Dep't of Employment, Unemployment Ins. Comm'n,* 2013 WY 12, ¶ 15, 294 P.3d 888, 892 (Wyo. 2013). The Commission is an administrative agency, so our review is governed by Wyo. Stat. Ann. § 16-3-114(c) (LexisNexis 2015):

> (c) To the extent necessary to make a decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:
>
> > (i) Compel agency action unlawfully withheld or unreasonably delayed; and
>
> > (ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

(B) Contrary to constitutional right, power, privilege or immunity;

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right;

(D) Without observance of procedure required by law; or

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

[¶9]   The Commission's findings of fact are reviewed under the substantial evidence standard. *Dale v. S & S Builders, LLC,* 2008 WY 84, ¶ 22, 188 P.3d 554, 561 (Wyo. 2008); Section 16-3-114(c). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bush v. State ex rel. Wyo. Workers' Comp. Div.,* 2005 WY 120, ¶ 5, 120 P.3d 176, 179 (Wyo. 2005) (citation omitted). Findings of fact are supported by substantial evidence when we can discern a rational premise for those findings from the evidence preserved in the record. *Id.* An agency's conclusions of law are reviewed *de novo. Moss v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2010 WY 66, ¶ 11, 232 P.3d 1, 4 (Wyo. 2010); *Dale,* ¶ 26, 188 P.3d at 561-62.

[¶10] "Unemployment benefit cases where misconduct is alleged present mixed questions of law and fact." *Aspen Ridge Law Offices v. Wyo. Dep't of Employment, Unemployment Ins. Comm'n,* 2006 WY 129, ¶ 11, 143 P.3d 911, 916 (Wyo. 2006), citing *Hat Six Homes v. State, D.O.E.,* 6 P.3d 1287, 1291 (Wyo. 2000). This case requires interpretation of the applicable statutes. Statutory interpretation is a matter of law subject to *de novo* review. *DB v. State (In re CRA),* 2016 WY 24, ¶ 15, 368 P.3d 294, 297 (Wyo. 2016).

## DISCUSSION

### A. Can serious and/or repeated negligence qualify as misconduct under Wyoming law?

[¶11] It is undisputed that Mr. Clark did not specifically intend to unload the wrong fuel into the tanks. Homax's representative conceded this during closing argument at the contested case hearing when he stated that Mr. Clark mixed product "not knowingly, but mistakenly." The legal questions, then, are whether negligence can qualify as

misconduct and, if so, under what circumstances. The answers to those questions are found in the relevant statutes.

[¶12] Pursuant to Wyo. Stat. Ann. § 27-3-311(f) (LexisNexis 2015), a claimant is disqualified from unemployment benefits if he was discharged for work-related misconduct:

> (f) **An individual shall be disqualified from benefit entitlement** beginning with the effective date of an otherwise valid claim or the week during which the failure occurred, until he has been employed in an employee-employer relationship and has earned at least twelve (12) times the weekly benefit amount of his current claim for services after that date, **if the department finds that he was discharged from his most recent work for misconduct connected with his work.**

(Emphasis added). Effective July 1, 2014, the legislature adopted the following definition of "misconduct connected with work":

> (xxiv) "Misconduct connected with work" means an act of an employee which indicates an intentional disregard of the employer's interests or the commonly accepted duties, obligations and responsibilities of an employee. "Misconduct connected with work" does not include:
>
> (A) Ordinary negligence in isolated instances;
>
> (B) Good faith errors in judgment or discretion;
>
> (C) Inefficiency or failure in good performance as the result of inability or incapacity.

Wyo. Stat. Ann. § 27-3-102(a)(xxiv) (LexisNexis 2015).

[¶13] When interpreting statutes, our goal is to determine the legislature's intent, giving due regard to the purpose and policy behind the enactment. *Kunkle v. State ex rel. Wyo. Workers' Safety & Comp. Div.,* 2005 WY 49, ¶ 11, 109 P.3d 887, 889-90 (Wyo. 2005); *Petroleum Inc. v. State ex rel. State Bd. of Equalization,* 983 P.2d 1237, 1240 (Wyo. 1999). We have said that the Wyoming Employment Security Law is interpreted liberally in favor of claimants. *Wyo. Dep't of Employment, Div. of Unemployment Ins. v. Rissler & McMurry Co.,* 837 P.2d 686, 690 (Wyo. 1992). "We construe the term misconduct 'in a manner least favorable to working a forfeiture' because unemployment compensation is part of an employee's compensation, not 'a gratuity which may be

withheld frivolously.'" *Aspen Ridge,* ¶ 16, 143 P.3d at 917, quoting *Rissler & McMurry Co.,* 837 P.2d at 690. The rule of liberal interpretation, however, cannot override the legislature's clear intent. *See, e.g.*, *TPJ v. State,* 2003 WY 49, ¶¶ 25-26, 66 P.3d 710, 715 (Wyo. 2003) (stating that although statutes providing for the care and supervision of juvenile delinquents are entitled to liberal effect and practical construction in favor of the child's welfare, the plain language of the statute still controls our search for legislative intent); *Collicot v. State ex rel. Wyo. Workers' Safety & Comp. Div*., 2001 WY 35, ¶ 13, 20 P.3d 1077, 1081-82 (Wyo. 2001) (interpreting the now-abrogated rule of liberal construction for workers' compensation cases as providing for liberal construction of the statutes only when it would not interfere with the clear language of the statute).

[¶14] The language of the statute is always our starting point. In conducting our analysis,

> "[w]e first decide whether the statute is clear or ambiguous. This Court makes that determination as a matter of law. 'A statute is unambiguous if its wording is such that reasonable persons are able to agree as to its meaning with consistency and predictability.' A 'statute is ambiguous only if it is found to be vague or uncertain and subject to varying interpretations.' "
>
> *Powder River Coal Co. v. State Bd. of Equalization,* 2002 WY 5, ¶ 6, 38 P.3d 423, ¶ 6 (Wyo. 2002) (citations omitted).

*Kunkle,* ¶ 11, 109 P.3d at 890. If the statutory language is "sufficiently clear and unambiguous, the Court simply applies the words according to their ordinary and obvious meaning." *In re CRA,* ¶ 16, 368 P.3d at 298. We give effect to each word, clause and sentence chosen by the legislature, and construe them *in pari materia. Pedro/Aspen, Ltd. v. Bd. of County Comm'rs for Natrona County,* 2004 WY 84, ¶ 27, 94 P.3d 412, 420 (Wyo. 2004). We do not interpret a statute in a way that renders a portion of it meaningless. *Id.*

[¶15] The statutory language at issue in this case is clear and unambiguous. Section 27-3-102(a)(xxiv) defines misconduct as "an act of an employee which indicates an intentional disregard of the employer's interests or the commonly accepted duties, obligations and responsibilities of an employee." Mr. Clark argues that, to be disqualified from unemployment insurance benefits, the employee must "willfully and intentionally" violate "an employer's proven work rules." Thus, according to Mr. Clark, a negligent act will never qualify as misconduct. Contrary to his assertion, the plain language of the statute does not require that the employee specifically intend to violate his employer's directives. Instead, the employee's act must **indicate** an intentional disregard of the employer's interest. The plain meaning of "indicate" is "to be a sign of," "evidence," or "show." Random House Dictionary 2016, www.dictionary.com. Thus, an

5

action that shows or is a sign of the employee's intent to disregard his duties or the employer's interest is sufficient to meet the statutory definition of misconduct.

[¶16] The statute continues by excepting certain types of conduct from the definition of misconduct, including "[o]rdinary negligence in isolated instances." Section 27-3-102(a)(xxiv)(A). Mr. Clark's position that all negligent acts are excluded from the definition of misconduct ignores that the statute only makes an exception for ordinary negligence in isolated instances. Under his interpretation, the exception for ordinary negligence in isolated instances has no meaning, violating the rule of statutory construction which gives effect to all language in the statute and renders none of it meaningless. Interpreting the statute as a whole, we conclude that negligence which does not fall within the exception for ordinary negligence in isolated instances may be misconduct.

[¶17] We turn, then, to the question of what type of negligence the legislature intended to categorize as misconduct. Once again, the answer to this question is found in the plain meaning of the statutory language. Under § 27-3-102(a)(xxiv)(A), negligence which is not misconduct must be both "ordinary" and "isolated." Logically, other negligence could be "misconduct." The plain meaning of "ordinary" is "being of the type that is encountered in the normal course of events," so negligence that is exceptional or unusual could be considered misconduct. In this context, "isolated" means "not often occurring or repeated;" consequently, repeated or recurrent negligence may be regarded as misconduct. Merriam-Webster Thesaurus 2016, Mirriam-Webster.com (definitions, synonyms and antonyms of "ordinary" and "isolated").

[¶18] In addition to the language in the statute, Wyoming precedent provides guidance on what types of negligence may be considered misconduct. It is appropriate for us to look to cases that predate the adoption of the statutory definition of misconduct because the legislature specifically stated, in the preamble to the act containing the 2014 definition of misconduct, that it was codifying our existing case law. 2014 Wyo. Sess. Laws 360 (S.F. 76). *See also Kinneman,* ¶ 15, ___ P.3d at ____.

[¶19] This Court addressed the meaning of misconduct connected with work in *Safety Medical Servs., Inc. v. Employment Sec. Comm'n,* 724 P.2d 468, 472-73 (Wyo. 1986):

> Misconduct under the Wyoming Employment Security Law means generally an act of an employee which indicates a disregard of (1) the employer's interests or (2) the commonly accepted duties, obligations and responsibilities of an employee. **This would include carelessness or negligence of such degree or recurrence as to reveal willful intent or an intentional disregard of the employer's interests or of the employee's duties and obligations to his employer.**

6

Inefficiency or failure in good performance as the result of inability or incapacity; ordinary negligence in isolated instances or good faith errors in judgment or discretion are not deemed to be misconduct within the meaning of the Law.

(Emphasis added). Through the years, we have consistently followed this definition of misconduct. *See State of Wyo., Dep't of Employment, Unemployment Ins. Comm'n v. Laramie County,* 2013 WY 68, ¶ 12, 302 P.3d 900, 904 (Wyo. 2013); *Aspen Ridge,* ¶ 16, 143 P.3d at 917; *Wyo. Dep't of Employment, Unemployment Ins. Comm'n v. SF Phosphates, Ltd.,* 976 P.2d 199, 201 (Wyo. 1999). Under *Safety Medical Services* and its progeny, an employee's intent to disregard his employer's interests or the employee's duties may be revealed when he commits a sufficiently serious act of negligence or repeatedly commits negligent acts. That type of conduct would, as the statute states, "indicate an intentional disregard of the employer's interests" or the "commonly accepted duties, obligations and responsibilities of an employee." Section 27-3-102(a)(xxiv).

[¶20] Mr. Clark claims, however, that our case law does not actually follow the principle that sufficiently serious or recurrent negligence may qualify as misconduct. He first asserts that *Doggett v. Wyo. Dep't of Workforce Servs., Unemployment Ins. Comm'n,* 2014 WY 119, 334 P.3d 1231 (Wyo. 2014) supports his position. Mr. Doggett was fired from his job as a mechanic in a motorcycle shop after he installed a dented cylinder on a customer's motorcycle and chipped a fin on the motor of his employer's motorcycle. We reversed the Commission's denial of benefits because the instances of misconduct the employer claimed justified Mr. Doggett's firing were not discovered by the employer until after he had already been terminated. We concluded that the evidence did not support a conclusion that he willfully and intentionally failed to comply with a known obligation or responsibility. *Id.,* ¶ 22, 334 P.3d at 1239. The *Doggett* decision did not specifically discuss the concept of recurrent negligence as misconduct; however, nothing in *Doggett* suggests that negligence could never form the basis for a finding of misconduct. Furthermore, unlike in the case at bar, there was no evidence in *Doggett* that the employer had specifically talked to the employee about his performance expectations or warned him after a prior occurrence of substandard work performance.

[¶21] Additionally, Mr. Clark claims *Aspen Ridge,* 2006 WY 129, 143 P.3d 911, supports his position that multiple warnings or instances of negligence cannot be categorized as misconduct connected with work. In that case, the employee was fired for failing to complete an attorney fees affidavit in a timely manner after the employer told her several times that it needed to be finished. The Commission awarded the employee benefits, and we affirmed. Mr. Clark seemingly tries to characterize the employee's actions with regard to the affidavit as numerous instances of negligence to demonstrate that Wyoming does not recognize recurrent negligence as misconduct. However, the opinion specifically refutes his position by noting that the employer failed to point to evidence that the employee's "conduct was more than an isolated incident." *Id., ¶* 18,

143 P.3d at 918. That statement strongly implies that recurrent negligence may satisfy the misconduct requirement.

[¶22] Mr. Clark also points to *SF Phosphates Ltd.,* 976 P.2d 199 and *City of Casper v. Wyo. Dep't of Employment, Unemployment Ins. Div.,* 851 P.2d 1 (Wyo. 1993), as authority for his argument that negligence cannot be misconduct connected with his work. Neither of those cases involved negligence; instead, they both addressed whether the employees' ill-advised statements and conduct toward fellow employees were simply "good faith errors in judgment" or misconduct. Consequently, they do not further the analysis in this case.

[¶23] Finally, Mr. Clark claims that *Koch,* 2013 WY 12, 294 P.3d 888, supports his contention that an employee must intentionally violate his employer's directive before he is disqualified from unemployment insurance benefits. In that case, the employee failed to remove snow from the hotel employer's walkways. When confronted, the employee told his manager that, although he knew his duties required him to remove snow, he had not performed the task because other employees did not shovel during earlier shifts. We upheld the Commission's denial of unemployment insurance benefits to Mr. Koch because the evidence demonstrated that he intentionally disregarded a commonly accepted duty of his employment. *Id.,* ¶¶ 21-25, 294 P.3d at 894-95. Given Mr. Koch acted with specific intent, we did not address whether negligence can qualify as misconduct. Consequently, that decision does not support Mr. Clark's position.

[¶24] None of the cases relied upon by Mr. Clark suggest that we have ignored or abandoned the concept set forth in *Safety Medical Services* that negligence of a sufficient degree or recurrence can be misconduct under Wyoming law. Furthermore, our definition of misconduct is consistent with other states. The general rule is described in S. Wagner, *Work-Related Inefficiency, Incompetence, or Negligence as "Misconduct" Barring Unemployment Comp.,* 95 A.L.R. 5th 329 (2002), as: "Misconduct is . . . defined to include negligence if the degree or frequency of the employee's negligent acts evidences wrongful intent or shows a substantial disregard of the employer's interests or the employee's duties." *See also* 76 Am.Jur.2d *Unemployment Compensation* § 69 ("Recurrent violations of the standards of behavior which an employer has the right to expect of an employee establishes such a deliberate and willful intent to disregard the rights of the employer as to constitute misconduct.").

[¶25] Wyoming's definition of misconduct originated in *Boynton Cab Co. v. Neubeck,* 296 N.W. 636, 639 (Wis. 1941). *Safety Med. Servs.,* 724 P.2d at 473. The Wisconsin Supreme Court explained that, under the *Boynton* rule, a recurrent pattern of negligence or a single negligent act that is sufficiently serious may establish the requisite intent to disregard the employer's interest even though the employee did not act with the specific intent to do so. *McGraw-Edison Co. v. Dep't of Industry, Labor & Human Relations,* 221 N.W.2d 677, 682-83 (Wis. 1974) (stating "the emphasis on the employee's intent

8

does not mean that the intent must actually exist"). In *Trinh Trung Do v. Amoco Oil Co.,* 510 So.2d 1063, 1064 (Fla. Ct. App. 1987), a Florida court of appeals evaluated a statutory definition of misconduct which included "carelessness or negligence of such a degree or recurrence . . . to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer." The court explained:

> [N]egligence on the part of an employee may give rise to an inference that the employee is improperly motivated to the extent either that the employer's interests are being disregarded or that the employee's duties are not being properly performed. Such an inference is properly raised by repeated acts of negligence (recurrence) or by conduct that is sufficiently egregious (degree) in and of itself to indicate an employee's lack of interest in his job or in his employer's best interests.

*Id.* at 1065.

[¶26] In summary, under our traditional rules of statutory interpretation, negligence that is not ordinary or isolated may qualify as misconduct. Wyoming case law, which the legislature specifically adopted and is consistent with the general rule across the country, establishes that negligence of sufficient degree or recurrence may be misconduct connected with work under the relevant statutes. Our rule of liberal interpretation in favor of the employee in unemployment insurance cases cannot take precedence over the legislature's clear intent to classify sufficiently serious or recurrent negligence as misconduct.

### B. Was the Commission's decision that Mr. Clark committed misconduct connected with his work supported by substantial evidence?

[¶27] Mr. Clark claims the Commission erred when it concluded his "honest mistake" in unloading the fuel into the wrong tanks was misconduct that disqualified him from unemployment insurance benefits. The Commission argues the record supports its conclusion that Mr. Clark's negligence falls within the definition of misconduct because it was of such a degree or recurrence to reveal an intention to disregard Homax's interest.

[¶28] The Commission accepted many of the hearing officer's findings of fact, although it rejected some and added its own findings of fact.[1] The combined findings of the hearing officer and the Commission included:

---

[1] On appeal from the hearing officer's decision, the Commission may review the evidence submitted before the appeal tribunal or may direct that additional evidence be taken. Wyo. Stat. Ann. § 27-3-404(a)

- Mr. Clark was employed by Homax for just two months, from July 21, 2014, through September 22, 2014.
- Mr. Clark mixed fuels in August 2014 and was reprimanded and warned that he would not be given another chance if he mixed product again.
- On September 14, 2014, Mr. Clark transported unleaded gasoline and diesel fuel to Homax's convenience store.
- He unloaded the fuels into the wrong tanks, resulting in approximately $25,000 worth of fuel being unsuitable for sale to the employer's customers.
- The employer drained the tainted fuels from the tanks at a cost of approximately $1,000.
- Mr. Clark was capable of satisfactorily performing his job duties.

The evidence in the record supports these findings, and Mr. Clark does not challenge them. Based upon these findings, the Commission ultimately concluded that Mr. Clark committed misconduct connected with his work.

[¶29] We must determine whether substantial evidence in the record supports the Commission's conclusion that Mr. Clark's negligence was sufficiently serious or recurrent to indicate an intent to disregard his commonly accepted duties or Homax's interest. To reiterate, substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Bush,* ¶ 5, 120 P.3d at 179. In determining whether substantial evidence supports a finding of misconduct, the employee's conduct is evaluated in the context of his particular employment situation. *See Employment Sec. Bd. of Md. v. LeCates,* 145 A.2d 840, 844 (Md. Ct. App. 1958), citing 8 Vand. L. Rev. 307, 334 (1955); *Johnson v. Job Service North Dakota,* 590 N.W.2d 877, 881 (N.D. 1999) (stating the "nature of the employment is a consideration when deciding whether an employee's conduct constitutes misconduct"). The totality of the circumstances, including the employee's past conduct and previous reprimands, is relevant in determining whether his actions reveal an intent to disregard his employer's interests or his commonly accepted duties. *See Rodman v. New Mexico Employment Sec. Dep't*, 764 P.2d 1316, 1320 (N.M. 1988).

[¶30] Mr. Clark knew that properly unloading fuel was an important duty of his employment. He had previously unloaded fuel into the wrong tanks while working for a different employer and was told by his supervisor at Homax when he was hired that "mixing product" was a serious mistake and could result in termination. Mr. Clark also knew that mixing fuels could have serious repercussions including ruining the fuel and damaging customers' vehicles if they were filled with the wrong fuel. Clearly, he understood that it was critically important to place fuel in its proper tank, both for the

& (b) (LexisNexis 2015). The Commission may then affirm, modify, or reverse the findings and conclusions of the appeal tribunal. *Kinneman,* ¶ 10, n.1, ___ P.3d at _____; *Koch,* ¶ 9, 294 P.3d at 891.

financial interest of his employer and the interest of the customers who purchased the fuel. In an attempt to avoid errors, Homax trained him in proper unloading techniques. Therefore, the evidence showed that Mr. Clark clearly understood his duty to properly unload the fuel and how to do it.

[¶31] Although Mr. Dwyer had warned Mr. Clark when he was hired that he could be terminated for mixing product, Mr. Dwyer gave Mr. Clark another chance after he incorrectly unloaded fuel in August 2014. Mr. Dwyer reprimanded him for the error and again emphasized the importance of making sure he was unloading the proper fuel into the tanks. Despite that warning and his training, just a month later, Mr. Clark unloaded the wrong fuel into the clearly marked tanks at Homax's convenience store.

[¶32] The definition of misconduct focuses on the employer's interest and the employee's commonly accepted duties, obligations and responsibilities to the employer. In the context of Mr. Clark's particular employment situation as a fuel truck driver, the correct unloading of fuel was undoubtedly one of his principal duties. The proper performance of that duty was critical to protect Homax's financial interest in the fuel and to protect it from potential liability to customers who might purchase tainted fuel. Even though Mr. Clark did not specifically intend to unload the fuel incorrectly, his repeated carelessness in performing that important task indicated, or was a sign of, his intention to disregard his employer's interest and his commonly recognized duty to unload the fuels properly. Given Mr. Clark's earlier mistake, the employer's repeated emphasis of the seriousness of his duty to unload the fuels correctly, and his training, there is substantial evidence in the record supporting the Commission's conclusion that his negligence qualified as misconduct because it was serious and recurrent.

[¶33] Although there is no Wyoming precedent analyzing a fact pattern comparable to the case at bar, we have located a case where a Pennsylvania court applied a nearly identical legal standard to similar circumstances—*Simmons v. Commonwealth of Pennsylvania, Unemployment Comp. Bd. of Rev.,* 565 A.2d 829, 832-34 (Pa. Cmwlth. 1989). Mr. Simmons inadvertently left a tank valve open causing two different kinds of oil to mix. The two oils were incompatible, so mixing them damaged the employer financially. During Mr. Simmons' seventeen year tenure with the employer, he had committed five similar acts of negligence and had been disciplined for his errors. Although Mr. Simmons did not specifically intend to mix the oils, the court concluded he committed misconduct under law that defined the term as "negligence indicating an intentional disregard of the employer's interest or the employee's duties and obligations to the employer." The court based this conclusion upon the facts that his carelessness resulted in significant loss to the employer and occurred despite prior warnings and disciplinary actions. *Id.*

[¶34] Mr. Simmons had a larger number of pre-termination disciplinary actions than Mr. Clark. However, Mr. Simmons' errors occurred during a seventeen year career. Mr.

11

Clark, on the other hand, committed two serious mistakes in a two month period. Thus, his disregard of his employer's interest is arguably more egregious than that demonstrated in the Pennsylvania case. The *Simmons* case provides further support for the Commission's conclusion that Mr. Clark's serious and repeated negligence in the face of a clear obligation, prior warnings, and training amounted to misconduct under the relevant statutes.[2]

[¶35] Finally, Mr. Clark asserts that he did not have the ability to perform the job; therefore, his error should be excused under the exception to the definition of misconduct for "inefficiency or failure in good performance as the result of inability or incapacity." Section 27-3-102(a)(xxiv)(C). The Commission found that he was capable of performing the job, and there is no evidence in the record establishing otherwise. Indeed, Mr. Clark complained at the contested case hearing that Homax waited a week after the September 14th incident to fire him, during which time he apparently performed his job without incident. There is clearly substantial evidence in the record to support the Commission's conclusion that he was capable of doing his job correctly but, through carelessness, he regularly committed serious errors, amounting to misconduct connected with his work.

## CONCLUSION

[¶36] The statutory definition of misconduct in § 27-3-102(a)(xxiv) includes negligence of such a degree or recurrence to indicate the employee intentionally disregarded the employer's interest or his commonly accepted duties. The intent is implied by the seriousness or recurrence of the negligence.

[¶37] Mr. Clark's actions indicated that he intentionally disregarded Homax's interest and/or his commonly accepted duties. Mr. Dwyer clearly informed Mr. Clark of the importance of not mixing product when he was hired, and he was trained in how to

---

[2] The district court opined that the following legal principle applied to Mr. Clark's situation:

> "When an employer contends that violation of its rule constitutes misconduct, the employer bears the burden of establishing the existence of the rule and its violation. If the employer establishes these elements, the burden shifts to the employee to demonstrate either that the violation was justified or that the rule was unreasonable."

*Doggett*, ¶ 10, 334 P.3d at 1235, quoting *Rissler & McMurry Co.,* 837 P.2d at 690.

Although proper unloading of fuels was an important obligation of Mr. Clark's employment, Homax did not have a formal employment rule prohibiting mixing fuel. Nevertheless, if we apply the legal principle applicable to employment rules in this case, we reach the same result. Homax clearly communicated to Mr. Clark that it was his responsibility to ensure fuels were not mixed, and he violated that responsibility. Mr. Clark made no effort to prove his violation of the duty was justified or the obligation was unreasonable, and it is difficult to conceive how he could have done so. In fact, he testified that he should have been fired for his action.

12

unload the fuel.  Nevertheless, he mixed product on two occasions within the two months he was employed by Homax.  The Commission's decision that Mr. Clark was disqualified from unemployment insurance benefits because his serious and recurrent negligence amounted to misconduct under Wyoming law was supported by substantial evidence.

[¶38]  Affirmed.